**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:  (310) 819-3470

*Counsel for Plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| RETAIL WHOLESALE DEPARTMENT STORE UNION LOCAL 338 RETIREMENT FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEYOND MEAT, INC., ETHAN WALDEN BROWN, MARK J. NELSON, and PHILLIP E. HARDIN,<br><br>Defendants. | Case No. 23-cv-3602<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (i) Beyond Meat, Inc.'s ("Beyond Meat" or the "Company") regulatory filings with the United States Securities and Exchange Commission ("SEC"); (ii) press releases and media reports issued and disseminated by the Company; (iii) analyst and media reports concerning Beyond Meat; and (iv) other public information regarding the Company, including statements made by Beyond Meat executives.

## I. INTRODUCTION

1. This securities class action is brought on behalf of purchasers of Beyond Meat common stock between May 5, 2020 and October 13, 2022, inclusive (the "Class Period"). The claims asserted herein are alleged against Beyond Meat, Ethan Walden Brown, Mark J. Nelson, and Phillip E. Hardin (collectively, "Defendants") and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Beyond Meat is a Los Angeles-based producer of plant-based meat substitutes. This matter arises from Defendants' material misrepresentations and omissions concerning the Company's ability to produce plant-based meats at scale to the specifications of its key customers, who the Company refers to as "partners."

3. Throughout the Class Period, Beyond Meat misled investors by boasting about the success of its product tests with its large-scale partnerships, including prominent food retailers like McDonalds, Starbucks, KFC, Pizza Hut, and Taco Bell. Beyond Meat assured investors and partners that it would "ensure manufacturability" through "extensive testing," and that it was capable of manufacturing the unique plant-based meat products at commercial scale. Further,

Beyond Meat blamed any delays in launching these large-scale partnerships on Covid-19.

4. Certain Beyond Meat executives profited enormously from the scheme described herein by selling hundreds of thousands of shares of their personally held Company stock at artificially inflated prices during the Class Period. For instance, Defendant Nelson sold 440,000 shares of Beyond Meat stock during the Class Period for over $58.3 million in proceeds.

5. The truth began to emerge on October 22, 2021, when Beyond Meat announced that the Company was reducing its third quarter net revenues outlook by up to $34 million, or 25%. As part of the announcement, Beyond Meat also revealed that the Company's expenses and inventories were continuing to rise. As a result of these disclosures, the price of Beyond Meat stock declined by $12.82 per share, or nearly 12%, from $108.62 per share to $95.80 per share.

6. Then, on November 10, 2021, Beyond Meat announced a $1.8 million write-off of unsold inventory. As a result of this disclosure, the price of Beyond Meat stock declined by $12.55 per share, or nearly 13%, from $94.48 per share to $81.93 per share.

7. However, Beyond Meat continued to assure investors of the success of its partnerships. For example, on November 10, 2021, Defendant Brown claimed that the Company "overcame numerous technical challenges" and blamed its poor financial results on the Covid-19 pandemic.

8. Then, on November 17, 2021, an article was published in *Bloomberg* highlighting the delays in production and execution challenges Beyond Meat was facing. Former employees reported that there were "significant internal problems" stemming from "confusion and misalignment . . . [and] belated decision-making" that corresponded with exacerbated production delays. As a result of these disclosures, the price of Beyond Meat stock declined by $3.01 per share, or more than 3.5%, from $83.48 per share to $80.97 per share.

9. On December 9, 2021, after the market closed, multiple media sources reported that Taco Bell had cancelled a planned product test due to ongoing quality concerns. As a result of these disclosures, the price of Beyond Meat stock declined by $5.58 per share, or nearly 8%, from $70.09 per share to $64.51 per share.

10. On October 14, 2022, Beyond Meat announced the departure of several top executives, including the Company's Chief Operating Officer, Chief Growth Officer, and Chief Financial Officer. As a result of these disclosures, the price of Beyond Meat stock declined by $1.43 per share, or over 9.6%, from $14.78 per share to $13.35 per share.

11. As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Beyond Meat's stock, Plaintiff and other Class members have suffered significant losses and damages.

II.     **JURISDICTION AND VENUE**

12. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Beyond Meat is headquartered in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails, interstate telephone communications, and the facilities of the national securities markets.

### III. THE PARTIES

14. Plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund is a pension system providing retirement benefits to New York and New Jersey employees working in various industries, including retail grocers, agriculture, healthcare, transportation, cannabis, and non-profit organizations. As indicated on the certification submitted herewith, Plaintiff purchased shares of Beyond Meat stock during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

15. Defendant Beyond Meat, headquartered in El Segundo, California, is a producer of plant-based meat substitutes. The Company's common stock trades on the NASDAQ, which is an efficient market, under ticker symbol "BYND." As of February 28, 2023, Beyond Meat had over 64 million shares of common stock outstanding, owned by at least hundreds or thousands of investors.

16. Defendant Ethan Walden Brown has served as the President and Chief Executive Officer of Beyond Meat from 2009 to present.

17. Defendant Mark J. Nelson served as Chief Financial Officer, Treasurer, and Chief Operating Officer of Beyond Meat from December 2015 to May 2021.

18. Defendant Phillip E. Hardin served as Chief Financial Officer of Beyond Meat from July 2021 to October 2022.

19. Defendants Brown, Nelson, and Hardin are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with Beyond Meat, possessed the power and authority to control the contents of Beyond Meat's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information,

each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV. BACKGROUND

20. Beyond Meat is a global producer of plant-based meat substitutes such as Beyond Burgers, Beyond Sausages, Beyond Meatballs, and Beyond Pepperoni based in El Segundo, California. Founded in 2009, Beyond Meat seeks to build "meat directly from plants" by faithfully replicating the look, taste, and texture of animal meat using only vegan, non-genetically modified ingredients.

21. Beyond Meat found success creating small, sample-sized prototypes of its product offerings, and received immense support from venture funding and celebrity investors. The Company went public in 2019 as the best-performing IPO in nearly two decades, with shares surging more than 163% in the first day of trading.

22. On the heels of its IPO, Beyond Meat announced numerous high-profile partnerships with foodservice providers, including Starbucks, McDonalds, KFC, Pizza Hut, and Taco Bell. According to a Company spokesperson, during these pitches Beyond Meat would "show foodservice customers prototypes to illustrate the art of the possible." The Company also assured investors that all new products are subject to Beyond Meat's "extensive" testing programs, in order to ensure not only the quality and fidelity of its products, but also that products are "qualified through trials to ensure manufacturability."

## V. DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

23. The Class Period begins on May 5, 2020, when Beyond Meat participated in its first quarter 2020 earnings conference call with analysts and investors. During that call, Beyond Meat presented several new and expanded

1  partnerships, including a limited test with McDonald's Canada that ran from January
2  to April 2020.

3      24. On that same conference call, in response to a question of why the test
4  ended in April without a widespread product launch, Defendant Brown stated, "for
5  no negative reason at all. . . . [W]e feel very good about our relationship with
6  McDonald's and what's going to be happening both there and potentially elsewhere."
7  When pushed further to explain why the test ended instead of expanding, Defendant
8  Brown responded, "I can assure you there's no issue with McDonald's" and "there's
9  been no change in information since we began this test and got good results in the
10 beginning and got good results at the end."

11     25. On June 10, 2020, Defendant Brown represented Beyond Meat at the
12 William Blair Growth Stock Conference. At the conference, Defendant Brown was
13 asked for an update on the McDonald's test and potential launch. In response,
14 Defendant Brown reiterated that "we had a very positive test with them. . . . I remain
15 very optimistic about our business in foodservice." In addition, Defendant Brown
16 touted recent tests with Pizza Hut, Taco Bell, and KFC, claiming "it was a terrific
17 launch" and "the tests are going well, went well." Defendant Brown also stated,
18 "our goal is to . . . provide the benefits from a nutritional perspective of meat to the
19 consumer. So you get taste right, you get nutrition right, so you're providing superior
20 nutritional value proposition, and then you drop price below animal protein."

21     26. On November 9, 2020, Beyond Meat held its third quarter 2020
22 earnings conference call with analysts and investors. On that call, analysts asked
23 Defendant Brown for an update on Beyond Meat's foodservice segments. Again,
24 Defendant Brown claimed that testing remained ongoing at foodservice providers,
25 including Pizza Hut and Taco Bell. Further, Defendants Brown and Nelson each
26 blamed Covid-19 for any delay in full-scale product launches, with Brown claiming
27 "there's [] testing going on, but I think folks are waiting for resumption of full
28 economic activity before they start to really add things into their menu."

27.     On March 1, 2021, Beyond Meat filed its annual report with the SEC on Form 10-K for the fiscal year ended December 31, 2020.  The Form 10-K stated that "ingredients in our flavors are qualified through trials to ensure manufacturability" and that "[f]lavors are extensively tested prior to introduction to ensure finished product attributes such as taste, texture, aroma and appearance are not negatively impacted."

28.     The statements in paragraphs 24-27 were materially false and misleading.  In truth, Beyond Meat was unable to manufacture its meat substitutes at scale to the specifications of its partners.  Further, Beyond Meat suffered from widespread scaling issues, particularly misalignment and delayed decision-making, which led to corresponding production delays.  Such issues were exacerbated by Beyond Meat's disjointed production lines.  These problems led some partners to balk at the high price of Beyond Meat's products and express doubts about the Company's ability to produce them at commercial scale.

## VI.     DISCLOSURES OF THE COMPANY'S MISCONDUCT CAUSE SIGNIFICANT INVESTOR LOSSES

29.     On October 22, 2021, Beyond Meat announced that it was reducing its third quarter net revenues outlook from between $120 million and $140 million to just $106 million, a decline of 12% to 25%.  As part of the announcement, Beyond Meat also revealed that the Company's expenses were continuing to rise.

30.     As a result of this disclosure, the price of Beyond Meat stock declined by $12.82 per share, or nearly 12%, from a closing price of $108.62 per share on October 21, 2021, to a closing price of $95.80 per share on October 22, 2021.

31.     Then, on November 10, 2021, after the markets closed, Beyond Meat announced a $1.8 million inventory write-off, blaming Covid-19 and product repackaging costs.

32. As a result of this disclosure, the price of Beyond Meat stock declined by $12.55 per share, or nearly 13%, from a closing price of $94.48 per share on November 10, 2021, to a closing price of $81.93 per share on November 11, 2021.

33. However, Defendants continued to assure investors of the Company's manufacturing capabilities and the strength of its partnerships. For example, on the November 10, 2021 earnings conference call with analysts and investors, Defendant Brown continued to attribute Beyond Meat's poor financial results and expiring inventory to the Covid-19 pandemic, stating "there's just unusual consumer behavior . . . whether it's people because of the Delta variant spending less time in the retail markets, being less open to trial in the absence of sampling programs." Defendant Brown also claimed that the Company "overcame numerous technical challenges" in its partnership with Pizza Hut to provide Beyond Pepperoni.

34. The statements in paragraph 33 were materially false and misleading. In truth, Beyond Meat was unable to manufacture its meat substitutes at scale to the specifications of its partners. As a result, Beyond Meat was unable to sell its product and, therefore, amassed unsalable inventory.

35. One week later, on November 17, 2021, *Bloomberg* published an article highlighting the delays in product roll out and execution challenges Beyond Meat was facing. That article, citing five former Beyond Meat employees, laid bare the Company's ongoing scaling problems and how those problems were tarnishing the Company's relationships with potential partners.

36. As a result of this disclosure, the price of Beyond Meat stock declined by an additional $3.01 per share, or over 3.5%, from a closing price of $83.48 per share on November 16, 2021, to a closing price of $80.97 per share on November 17, 2021.

37. Then, on December 9, 2021, after the market closed, multiple media sources reported that Taco Bell had cancelled a planned test of Beyond Carne Asada due to ongoing quality concerns. According to those reports, this cancellation was

further evidence of ongoing problems Beyond Meat faced in bringing its products to market at scale.

38. As a result of this disclosure, the price of Beyond Meat stock declined by $5.58 per share, or nearly 8%, from a closing price of $70.09 per share on December 9, 2021, to a closing price of $64.51 per share on December 10, 2021.

39. Following these disclosures, Beyond Meat continued to assure investors that its product testing was going well. For example, on February 24, 2022, Beyond Meat participated in its fourth quarter 2021 earnings conference call with analysts and investors. On that call, Defendant Brown stated, "with the resumption of our broader sampling program, this period of delay appears to be coming to an end, and several products are in various stages of market entry or expansion."

40. Then, on March 2, 2022, Beyond Meat filed its annual report with the SEC on Form 10-K for the fiscal year ended December 31, 2021. The Form 10-K again stated that "ingredients in our flavors are qualified through trials to ensure manufacturability" and "[f]lavors are extensively tested prior to introduction to ensure finished product attributes such as taste, texture, aroma and appearance are not negatively impacted."

41. The statements in paragraphs 39-40 were materially false and misleading. In truth, Beyond Meat was unable to manufacture its meat substitutes at scale to the specifications of its partners. Further, Beyond Meat suffered from widespread scaling issues, particularly misalignment and delayed decision-making, which led to corresponding production delays. Such issues were exacerbated by Beyond Meat's disjointed production lines. These problems led some partners to balk at the high price of Beyond Meat's products and express doubts about the Company's ability to produce them at commercial scale.

42. On October 14, 2022, before the market opened, Beyond Meat announced the departure of several of its top executives, including the Chief

9

Operating Officer (Doug Ramsey), Chief Growth Officer (Deanna Jurgens), and Chief Financial Officer (Defendant Hardin).

43. As a result of this disclosure, the price of Beyond Meat stock declined by $1.43 per share, or over 9.6%, from a closing price of $14.78 per share on October 13, 2022, to a closing price of $13.35 per share on October 14, 2022.

## VII. LOSS CAUSATION

44. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. These misleading statements and omissions artificially inflated the price of Beyond Meat stock and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, Beyond Meat's stock price fell significantly. As a result of their purchases of Beyond Meat stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VIII. CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Beyond Meat common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, and directors and officers of Beyond Meat and their families and affiliates.

46. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of February 28, 2023, Beyond Meat had over 64 million shares of stock outstanding, owned by at least hundreds or thousands of investors.

47. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members

of the Class, which predominate over questions which may affect individual Class members, include:

  (a) Whether Defendants violated the Exchange Act;

  (b) Whether Defendants' statements and/or actions misrepresented material facts;

  (c) Whether Defendants' statements and/or actions omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

  (d) Whether Defendants knew or recklessly disregarded that their statements, actions, and/or omissions were false and misleading;

  (e) Whether Defendants' misconduct impacted the price of Beyond Meat stock;

  (f) Whether Defendants' conduct caused the members of the Class to sustain damages; and

  (g) The extent of damages sustained by Class members and the appropriate measure of damages.

48. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

49. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IX.  INAPPLICABILITY OF STATUTORY SAFE HARBOR

51. Beyond Meat's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

52. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Beyond Meat who knew that the statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present-tense statements when made.

X. **PRESUMPTION OF RELIANCE**

53. At all relevant times, the market for Beyond Meat stock was an efficient market for, among others, the following reasons:

(a) Beyond Meat stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Beyond Meat filed periodic public reports with the SEC and the NASDAQ;

(c) Beyond Meat regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) Beyond Meat was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

54. As a result of the foregoing, the market for Beyond Meat stock promptly digested current information regarding Beyond Meat from all publicly available sources and reflected such information in the price of Beyond Meat stock. Under these circumstances, all purchasers of Beyond Meat stock during the Class Period suffered similar injury through their purchase of Beyond Meat stock at artificially inflated prices and the presumption of reliance applies.

55. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material misstatements. Because this action involves Defendants' misrepresenting material information regarding its net loss and internal control over financial reporting, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the misstatements be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Company's financial statements to investors, as set forth above, that requirement is satisfied here.

## XI. CLAIMS FOR RELIEF UNDER THE EXCHANGE ACT

### COUNT I

**For Violations of Section 10(b) of the Exchange Act
and SEC Rule 10b-5 Promulgated Thereunder
(Against Beyond Meat and the Individual Defendants)**

56. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57. During the Class Period, Beyond Meat and the Individual Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Beyond Meat stock at artificially inflated prices.

58. Beyond Meat and the Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. Beyond Meat and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

60. During the Class Period, Beyond Meat and the Individual Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61. Beyond Meat and the Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them. Beyond Meat and the Individual Defendants engaged in this misconduct to conceal Beyond Meat's true condition from the investing public and to support the artificially inflated prices of the Company's stock.

62. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they purchased Beyond Meat stock at artificially inflated prices and were harmed when the truth about Beyond Meat negatively impacted the price of the Company's stock. Plaintiff and the Class would not have purchased Beyond Meat stock at the prices they paid, or at all, had they been aware that the

market prices for Beyond Meat common stock had been artificially inflated by Beyond Meat's and the Individual Defendants' fraudulent course of conduct.

63. As a direct and proximate result of Beyond Meat's and the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's stock during the Class Period.

64. By virtue of the foregoing, Beyond Meat and the Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

65. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Beyond Meat within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Beyond Meat, the Individual Defendants had the power and ability to control the actions of Beyond Meat and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensation to Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of

15

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

    D.    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XIII. JURY DEMAND

    Plaintiff demands a trial by jury.

Dated: May 11, 2023　　　　　　　　　　Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

-and-

Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, John R. Durso, on behalf of Retail Wholesale Department Store Union Local 338 Retirement Fund ("Local 338"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Local 338 and I am authorized to sign this certification on its behalf. I have reviewed the complaint and authorize its filing by counsel.

2. Local 338 did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Local 338 is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Local 338's transactions in the Beyond Meat, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Local 338 has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *Local 295 IBT Employer Group Welfare Fund v. Compass Minerals International, Inc.*, No. 22-cv-2432 (D. Kan.)

6. Local 338 is currently seeking to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *City of Warwick Retirement System v. Catalent, Inc.*, No. 23-cv-1108 (D.N.J.)
    *Retail Wholesale Department Store Union Local 338 Retirement Fund v. Stitch Fix, Inc.*, No. 22-cv-4893 (N.D. Cal.)

7. Local 338 will not accept any payment for serving as a representative party on behalf of the Class beyond Local 338's respective pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, 2023.

_____
John R. Durso, Chairman
Retail Wholesale Department Store Union
Local 338 Retirement Fund

**Retail Wholesale Department Store Union Local 338 Retirement Fund Transactions in Beyond Meat, Inc.**

| Transaction | Date | Shares | Price |
| --- | --- | --- | --- |
| Purchase | 9/29/2020 | 9,939 | 166.9925 |
| Purchase | 11/16/2020 | 421 | 126.4850 |
| Purchase | 11/17/2020 | 269 | 128.1588 |
| Purchase | 11/17/2020 | 4,173 | 129.4085 |
| Purchase | 11/18/2020 | 3,474 | 135.7733 |
| Purchase | 12/17/2020 | 1,920 | 142.5198 |
| Purchase | 12/18/2020 | 5,657 | 143.8936 |
| Purchase | 12/30/2020 | 2,215 | 126.4302 |
| Purchase | 2/26/2021 | 6,544 | 146.9058 |
| Purchase | 3/19/2021 | 1,668 | 139.3632 |
| Purchase | 5/10/2021 | 4,087 | 106.8340 |
| Purchase | 9/30/2021 | 1,352 | 105.8095 |
| Sale | 5/3/2021 | (586) | 125.5851 |
| Sale | 6/22/2021 | (2,039) | 143.8007 |
| Sale | 7/22/2021 | (1,378) | 127.8149 |
| Sale | 7/27/2021 | (10,413) | 121.6971 |