LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
   *michele.johnson@lw.com*
  Ryan A. Walsh (Bar No. 294506)
   *ryan.walsh@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone:  +1.714.540.1235
Facsimile:  +1.714.755.8290

  Heather A. Waller (*Pro Hac Vice*)
   *heather.waller@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  +1.312.876.7700
Facsimile:  +1.312.993.9767

*Attorneys for Defendants*
*Beyond Meat, Inc., Ethan Walden Brown,*
*Mark J. Nelson, and Philip E. Hardin*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SASKATCHEWAN HEALTHCARE EMPLOYEES' PENSION PLAN, and MARIO COLATO, <br><br> Plaintiffs, <br><br> v. <br><br> BEYOND MEAT, INC., et al., <br><br> Defendants. | Case No. 2:23-cv-03602-MWF-AGR <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> Date:     April 8, 2024 <br> Time:    10:00 a.m. <br> Place:   Courtroom 5A <br><br> Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................9

II.   ARGUMENT ........................................................................................11

    A.    Plaintiffs Do Not Plead Falsity ...........................................11

        1.    Plaintiffs Waived Their Challenge to Multiple Statements...................................................................11

        2.    Plaintiffs Fail to Allege False or Misleading Statements...................................................................11

        3.    Many of the Challenged Statements Are Inactionable As a Matter of Law .............................17

    B.    The Complaint Fails to Allege Scienter............................21

        1.    Plaintiffs Do Not Allege Brown Concealed Information with Deliberate Recklessness or Intent ..............21

        2.    Plaintiffs Cannot Bootstrap Scienter With Nelson's and Hardin's Other Public Statements ....................27

        3.    Plaintiffs Make No Showing of Hardin's Scienter.................27

        4.    Nelson's Trading Does Not Establish Scienter .......................28

        5.    Plaintiffs' Remaining Arguments Fail to Establish Corporate Scienter ...............................................28

    C.    Plaintiffs Fail to Plead Loss Causation ............................30

    D.    Plaintiffs' Section 20(a) and 20A Claims Fail.................32

III.  CONCLUSION ...................................................................................34

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Elec. Pension Fund v. Asar*,
768 F. App'x 175 (5th Cir. 2019)........................................................21

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)..................................23

*Bajjuri v. Raytheon Techs. Corp.*,
2023 WL 3650554 (D. Ariz. May 25, 2023)......................................32

*Baylor v. Honda Motor Co.*,
2024 WL 650415 (C.D. Cal. Jan. 19, 2024).......................................13

*Beatbox Music Pty, Ltd. v. Labrador Ent., Inc.*,
2021 WL 831017 (C.D. Cal. Jan. 12, 2021).......................................26

*Brown v. Ambow Educ. Holding Ltd.*,
2014 WL 523166 (C.D. Cal. Feb. 6, 2014).........................................30

*Carr v. Zosano Pharma Corp.*,
2021 WL 3913509 (N.D. Cal. Sept. 1, 2021)......................................24

*City of Miami Gen. Emps. & Sanitation Emps. Ret. Tr. v. RH, Inc.*,
302 F. Supp. 3d 1028 (N.D. Cal. 2018) .......................................24, 25

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
2023 WL 155861 (D. Ariz. Jan. 11, 2023).........................................30

*Crypto Asset Fund, LLC v. Hoard, Inc.*,
2020 WL 13556129 (S.D. Cal. Dec. 14, 2020)..................................12

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017).............................................................32

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2023)..........................................................23, 25

*Ezzes v. Vintage Wine Ests.*,
2024 WL 895018 (D. Nev. Mar. 1, 2024).........................................23

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

*Garcia v. City of L.A.*,
611 F. Supp. 3d 918 (C.D. Cal. 2020)......................................................................11, 18

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)...................................................................................15, 18

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022).................................................................20

*In re Able Lab. Sec. Litig.*,
2008 WL 1967509 (D.N.J. 2008)...................................................................................33

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ...........................................................................12

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021)............................................................................................25

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020).................................................................23

*In re AST Rsch. Sec. Litig.*,
887 F. Supp. 231 (C.D. Cal. 1995).................................................................................33

*In re Astra Space, Inc. Sec. Litig.*,
2023 WL 4983156 (N.D. Cal. Aug. 2, 2023).................................................................20

*In re Banc of Cal. Sec. Litig.*,
2017 WL 3972456 (C.D. Cal. Sept. 6, 2017).................................................................29

*In re BioMarin Pharm. Inc. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ....................................................................13

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020).........................................................................................30

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
2018 WL 2382600 (S.D.N.Y. May 24, 2018).................................................................17

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008).........................................................................33

*In re Dentsply Sirona, Inc. Sec. Litig.*,
665 F. Supp. 3d 255 (E.D.N.Y. 2023)............................................................................13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

*In re Diamond Foods, Inc., Sec. Litig.*,
2012 WL 6000923 (N.D. Cal. Nov. 30, 2012)..............................................23, 24

*In re Enovix Corp. Sec. Litig.*,
2024 WL 349269 (N.D. Cal. Jan. 30, 2024) ........................................21, 24, 27

*In re Facebook*,
84 F.4th at 953 ................................................................................................26

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023)........................................................................21, 30

*In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*,
503 F. Supp. 2d 25 (D.D.C. 2007) .......................................................................33

*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...............................................................13

*In re Mylan N.V. Sec. Litig.*,
2023 WL 3539371 (W.D. Pa. May 18, 2023).......................................................13

*In re Quality Sys., Inc., Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017)..............................................................................17

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012).........................................................................11, 12

*In re Semiconductor Mfg. Int'l Corp. Sec. Litig.*,
2023 WL 6290742 (9th Cir. Sept. 27, 2023).......................................................30

*In re Under Armour Sec. Litig.*,
2020 WL 363411 (D. Md. Jan. 22, 2020) ............................................................25

*In re Upstart Holdings, Inc. Sec. Litig.*,
2023 WL 6379810 (S.D. Ohio Sept. 29, 2023)....................................................28

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)...........................................................25

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
998 F.3d 397 (9th Cir. 2021).................................................................................31

*Karam v. Corinthian Colls.*,
2012 WL 8499135 (C.D. Cal. Aug. 20, 2012)......................................................17

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020)......................................................15, 17, 28

*Khoja v. Orexigen Therapeutics, Inc.*,
498 F. Supp. 3d 1296 (S.D. Cal. 2020) .............................................................30

*Lamartina v. VMware, Inc.*,
2023 WL 2763541 (N.D. Cal. Mar. 31, 2023) ...................................................28

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022)............................................................................17

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) .................................................................................33

*Ng. v. Berkeley Lights, Inc.*,
2024 WL 695699 (N.D. Cal. Feb. 20, 2024).....................................................28

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .............................................................................26

*Pirani v. Netflix, Inc.*,
2024 WL 69069 (N.D. Cal. Jan. 5, 2024) .........................................................12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)...........................................................................22

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021)..............................................................22, 23, 24

*Reckstin Family Tr. v. C3.AI, Inc.*,
2024 WL 734497 (N.D. Cal. Feb. 22, 2024)......................................................22

*Roberti v. OSI Sys., Inc.*,
2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ..............................................21, 23

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .............................................................................28

*Ryan v. FIGS, Inc.*,
2024 WL 187001 (C.D. Cal. Jan. 17, 2024).........................................23, 24, 27

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
485 F. Supp. 3d 1113 (N.D. Cal. 2020) ........................................................20, 33

6

*Steamfitters Local 449 Pension Fund v. Alter*,
    2011 WL 4528385 (E.D. Pa. 2011)......................................................................33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................................27

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................23, 29

*Todd v. STAAR Surgical Co.*,
    2016 WL 6699284 (C.D. Cal. Apr. 12, 2016)..............................................17, 23

*Turocy v. El Pollo Loco Holdings, Inc.*,
    2018 WL 3343493 (C.D. Cal. July 3, 2018) .......................................................33

*Vander Ark v. HAF Corp.*,
    2023 WL 6194393 (C.D. Cal. Sept. 6, 2023).....................................................27

*Veal v. Lendingclub Corp.*,
    2020 WL 3128909 (N.D. Cal. June 12, 2020), *aff'd*, 2021 WL
    4281301 (9th Cir. Sept. 21, 2021) ......................................................................26

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ..............................................................................26

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ...................................................22

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022)...............................................................................12

*Weston v. DocuSign, Inc.*,
    669 F. Supp. 3d 849 (N.D. Cal. 2023) ................................................................20

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)......................................................................12, 19

*Yoshikawa v. Exxon Mobil Corp.*,
    2022 WL 4677621 (N.D. Tex. Sept. 29, 2022).....................................17, 21, 24

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................29, 30

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

**STATUTES**

15 U.S.C.
  § 78t-1(a) ....................................................................................................... 32
  § 78u-5(i)(A)–(D) .......................................................................................... 19

8

## I.     INTRODUCTION

In their Motion, Defendants explained Plaintiffs' untenable theory of the case—namely, that a company pioneering the plant-based meat industry would choose to pour millions of dollars into expanding manufacturing capacity and developing and test-launching multiple products with some of the world's largest fast-food chains (*i.e.*, QSRs[1]), all while secretly knowing from the outset that the business was doomed to fail.  Plaintiffs' complaint relies entirely on fraud-by-hindsight and should be dismissed.

***Falsity***.  Plaintiffs' Opposition does not even address the purported falsity of many of the challenged statements, including the single statement attributed to Nelson.  Plaintiffs thus concede that those statements are not actionable.

Plaintiffs similarly do not respond to Defendants' argument that the Complaint contains no particularized facts showing that *each* challenged statement was false or misleading when made.  Instead, Plaintiffs argue that vague allegations about purported operational issues during the 2.5-year Class Period demonstrate that virtually *every* reference to Beyond Meat's QSR partnerships, scaling efforts, and product quality was false or misleading when made.  But such generalized pleading fails to satisfy the PSLRA's heightened pleading standard.   In response to Defendants' argument that nineteen challenged opinion statements are inactionable, Plaintiffs respond in a footnote, simply claiming that the opinion statements were "made with scienter."  Such a response certainly does not come close to supporting Plaintiffs' alleged claims.  *See* Mot. at 23; *infra* Section II.A.3.

Plaintiffs have no meaningful response to the fact that since 2020 Beyond Meat repeatedly disclosed the risks of investing in a growth-focused company.  *See* Mot. at 13–14; App. B (listing risk disclosures).  Plaintiffs blame the Company for

---

[1] Unless otherwise noted, all abbreviations and capitalized terms have the same meaning as in Defendants' Memorandum of Law In Support of Defendants' Motion to Dismiss.  ECF No. 42-1.

remaining cautiously positive about the likelihood of success (without alleging known facts to the contrary), but no reasonable investor would interpret Beyond Meat's statements as guarantees of success. To conclude otherwise would have required Beyond Meat to predict the future: a particularly impossible task during the alleged Class Period, which included an unprecedented global pandemic.

***Scienter***. Plaintiffs have pled zero facts showing what *each speaker* knew and *when*—two critical components of the scienter inquiry. Having failed to show that Defendant Brown had actual knowledge that any statement he made was false or misleading, Plaintiffs instead rely on weak, circumstantial "should have known" allegations based on Brown's position and public statements. The lack of any cogent theory of motive or insider trading allegations further cuts against an inference of scienter for Brown.

With regard to Nelson, Plaintiffs fail to tie any contemporaneous facts supporting scienter to his single challenged statement about the impact of COVID-19 (which they concede is not actionable). They also fail to demonstrate how the timing of Nelson's sales was "suspicious," out of line with prior practices, or unusually large. And Plaintiffs do not even attempt to address the fact that the Complaint is completely devoid of any allegations suggesting Hardin had the requisite scienter in making his single challenged statement.

***Loss Causation***. Plaintiffs do not explain how the purported corrective disclosures revealed any "truth" to investors. Instead, Plaintiffs rely heavily on Beyond Meat's stock price declines following news articles or earnings announcements. But Beyond Meat's stock price declines reflect only that the Company transparently disclosed negative news over time as the Company struggled during a global pandemic. The PSLRA requires Plaintiffs to plead much more.

***Section 20(a) and 20A.*** Because Plaintiffs fail to plead a primary Section 10(b) claim, the derivative Section 20(a) and 20A claims fail. Plaintiffs also do not dispute that Nelson and Hardin were not "control" persons for statements made when

10

they were not at the Company, so those Section 20(a) claims must be dismissed. Finally, Plaintiffs' Section 20A claim against Nelson must be dismissed because his sales were not made "contemporaneously" with Plaintiffs' purchases. Plaintiffs do not explain how Nelson's sales *after* Plaintiffs' purchases or at a *lower* price than Plaintiffs' purchase price could disadvantage Plaintiffs.

## II.    ARGUMENT

### A.    Plaintiffs Do Not Plead Falsity

#### 1.    Plaintiffs Waived Their Challenge to Multiple Statements

The Opposition does not address Defendants' arguments as to the alleged misstatements in Paragraphs 54, 76, 110, 134, and 135 of the Complaint. *Compare* Mot. at 17, 19, 20–21 (demonstrating lack of falsity), *with* Opp. at 5–15 (responding to falsity arguments). Plaintiffs' claims as to those statements are thus waived and must be dismissed. *See, e.g.*, *Garcia v. City of L.A.*, 611 F. Supp. 3d 918, 933 n.17 (C.D. Cal. 2020) (failing to address challenge to certain statements warrants dismissal of those statements).

#### 2.    Plaintiffs Fail to Allege False or Misleading Statements

The Opposition highlights Plaintiffs' fundamental failure to plead facts showing that each challenged statement was false or misleading when made. *See* Mot. at 15–21; *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (plaintiffs must allege challenged statements were "false or misleading at the time they were made"). This failure is fatal to Plaintiffs' claims.

***Statements About QSR Partnerships.*** Contrary to Plaintiffs' assertion, Beyond Meat *never* suggested to investors that its product launches would "imminent[ly]" lead to "permanent [menu] placements" nationwide. Opp. at 5.[2] Far

---

[2] In support of their mischaracterization, Plaintiffs confusingly point only to statements made in May or June 2020 regarding initial product tests: *e.g.*, "there's no issue with McDonald's" and "we had a very positive test with them." Opp. at 5. But highlighting successful initial tests conveys no guarantees about the ultimate outcomes of the product launches or permanent menu placements, let alone the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

from it. Beyond Meat made numerous disclosures about the likelihood of success of its partnerships and warned investors that Beyond Meat "cannot promise any launches" from early tests with QSRs. Ex. 2[3]; *see also* App. B.

The Opposition does not point to a single contemporaneous fact showing that the Company's relationships were not "strong," "continuing," or "very good," or that Beyond Meat was not the "preferred supplier" for McDonald's and YUM! Brands. *See* Opp. at 5–8. Instead, Plaintiffs contend that later purported scaling and manufacturing challenges rendered those *objectively true* statements false. *Id.* But Plaintiffs' assertion that Beyond Meat eventually would not be able to "scale production of its QSR product formulations," Opp. at 6, says nothing about the truth (or falsity) of statements regarding the state of Beyond Meat's QSR partnerships at the time the earlier statements were made. *See, e.g.*, *In re Rigel Pharms.*, 697 F.3d at 876; *Pirani v. Netflix, Inc.*, 2024 WL 69069, at *9 (N.D. Cal. Jan. 5, 2024) (plaintiffs' "vagueness around timing" and "around what was said and by whom" was fatal to their claim); *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 945 (N.D. Cal. 2010) ("Plaintiffs cannot simply rely on a 'fraud by hindsight' theory to demonstrate falsity."); *Crypto Asset Fund, LLC v. Hoard, Inc.*, 2020 WL 13556129, at *7 (S.D. Cal. Dec. 14, 2020) ("A dispute does not rise to the level of securities fraud merely when a promise is unfulfilled."). In fact, YUM! Brands added several of Beyond Meat's products as permanent menu items in locations around the world, including in the U.K. and Canada. Exs. 3, 6.

The same is true for allegations that Beyond Meat misled investors that "the [product] tests are going well, went well" or had "great results." Opp. at 6; *see Wochos*, 985 F.3d at 1196; *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611,

---

imminency of any placements. *See, e.g.*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (touting company's "great progress" would be actionable only if company was "making no progress at all").

[3] Plaintiffs did not object to Defendants' previously filed Request for Judicial Notice. Opp. at 4 n.1.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

620 (9th Cir. 2022) ("[C]ompanies do not have an obligation to offer an instantaneous update of every internal development, especially when it involves the oft-tortuous path of product development."); *Baylor v. Honda Motor Co.*, 2024 WL 650415, at *6 (C.D. Cal. Jan. 19, 2024) (describing cars' safety features did not "affirmatively create[] an impression that every single one of those vehicles would be free of defects").  Indeed, Plaintiffs allege no facts suggesting that the product tests were "performing poorly" at the time the statements were made in June 2020, August 2020, February 2021, or November 2021.  Compl. ¶¶ 42–43, 46–47, 67, 101, 96.

Plaintiffs' cited cases are distinguishable.  *See* Opp. at 11–12.  In *In re BioMarin Pharmaceutical Inc. Securities Litigation*, 2022 WL 164299, at *13 (N.D. Cal. Jan. 6, 2022), the defendants' statement that their company had a "good relationship" with the FDA was adequately alleged to be false given that the FDA raised numerous concerns about the company's product and ultimately ceased communications with the company entirely.  Plaintiffs in *In re Dentsply Sirona, Inc. Securities Litigation*, 665 F. Supp. 3d 255, 272–73, 284 (E.D.N.Y. 2023), pled falsity with respect to statements about the company's "very strong" relationship with its distributor by alleging specific facts showing that the distributor sought to renegotiate key terms in their agreements.  In contrast, Plaintiffs do not allege that at the time of the challenged statements, the QSR partners communicated dissatisfaction to Beyond Meat, were actively working to "restrict" the relationship, or were planning to terminate their partnerships.  *See* Compl. ¶¶ 39–40, 47, 56–57, 75, 78–79, 115, 127.

Unable to point to any contemporaneous facts, Plaintiffs argue that their allegations were "corroborated" by *Bloomberg* and *Wall Street Journal* ("*WSJ*") articles.  Opp. at 7.  As Plaintiffs' own authority establishes, news articles should be credited only to the extent they are particularized and detailed.  *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000); *In re Mylan*

13

*N.V. Sec. Litig.*, 2023 WL 3539371, at \*7–8 (W.D. Pa. May 18, 2023) (finding *Bloomberg* articles reliable because author interviewed more than *two dozen* inspectors and officers, reviewed more than ten years of data, and examined hundreds of documents in year-long investigation). Here, the cited articles provide minimal detail about any alleged "quality control problems." *See* Compl. ¶¶ 33, 104–08, 112, 118, 160–64 (referencing just five unidentified former employees over unspecified period at unspecified locations).

But even fully credited, the *Bloomberg* and *WSJ* articles do not support falsity. Concerning the fourteen challenged QSR statements that pre-date the articles (*see* App. A), the Complaint does not cite *anything* in *any* article that shows the challenged statements were false or misleading when made. Compl. ¶¶ 33, 104–08, 112, 118, 160–64. For example, Plaintiffs highlight a December 10, 2021 *Bloomberg* article regarding Taco Bell's decision to cancel a test of Beyond Meat's carne asada due to alleged ongoing quality concerns. Opp. at 6. But the only challenged statement referencing Taco Bell made before the *Bloomberg* article simply told investors that Taco Bell is one of the "partners that we're going to be deeply innovating with and bringing the very best of our innovation." Compl. ¶ 67 (Feb. 25, 2021). Plaintiffs do not attempt to explain how the information reported in *Bloomberg* contradicted that statement from ten months earlier or showed the Company knew at the time that Taco Bell would eventually cancel a test.

The *only* other challenged statement referencing Taco Bell is from a joint statement by Taco Bell and Beyond Meat the same day the *Bloomberg* article was published. Compl. ¶¶ 112, 115. That joint statement specifically disclosed that "[e]valuating multiple iterations when scaling a product is standard practice in our industry," and still, Beyond Meat's "**partnership with Taco Bell is strong and continuing**." Compl. ¶ 115. Plaintiffs do not plead a single fact that would explain why Taco Bell itself would misrepresent the state of its relationship with Beyond

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

Meat. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 777 (9th Cir. 2023).

Finally, Plaintiffs argue that Beyond Meat's positive statements about its relationship with McDonald's, Compl. ¶¶ 39, 40, 42, 56, 57, 68, 75, 79, were contradicted by McDonald's decisions to "announce[] the McPlant without naming Beyond Meat" on November 9, 2020, and by a J.P. Morgan analyst's belief expressed in July 2022 that McDonald's had discontinued all of its U.S. tests. Opp. at 8. But these arguments are belied by Plaintiffs' own pleading. Plaintiffs allege that even after McDonald's announced the McPlant without naming Beyond Meat, Compl. ¶ 189, McDonald's and Beyond Meat entered into a formal three-year partnership agreement, launched additional nationwide tests, and expanded the availability of Beyond Meat's plant-based burger to 600 McDonald's locations. *Id.* ¶¶ 26, 28, 61, 125.

Plaintiffs rely on *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *12 (C.D. Cal. Jan. 17, 2020), to argue that Defendants had a duty to "disclos[e] adverse information that cuts against the positive information" in the Company's disclosures. Opp. at 6. But in *Karinski*, plaintiffs challenged statements regarding the defendant company's "strong" relationship with USPS by alleging specific facts showing that USPS had launched an investigation into the company's suspect business practices and made efforts to restrict the partnership *before* defendants' public statements. 2020 WL 281716, at *11–12, 16. The allegations here come nowhere close to showing that Beyond Meat's QSR partners took any such action before any of the challenged statements. Plaintiffs' reliance on *Karinski* is therefore misplaced.

***Statements About Beyond Meat's Investments.*** Plaintiffs argue that Beyond Meat conveyed a misleading impression that the Company was making meaningful investments to scale QSR production and "bring costs out," when, instead the Company was "rush[ing]" to "'grow[] at all costs.'" *See* Opp. at 8–9; Compl. ¶¶ 4, 22. This challenge fails for multiple reasons.

15

First, Plaintiffs mischaracterize the Company's statements about its investments as being connected to the QSRs. *E.g.*, Opp. at 8–9. Most of the challenged statements regarding the Company's investments in operations and infrastructure do not even mention or relate to QSR partnerships. *See* Compl. ¶¶ 44 (discussing "production costs associated with product innovation"), 58 (describing overall strategy to "finish[] goods completely in-house" and "reach price parity with that of animal protein"), 84 (discussing "U.S. retail"), 133 (highlighting Company's "multiple initiatives," including Beyond Jerky); *see also id.* ¶¶ 65, 70, 76, 101 (similar). These statements cannot support Plaintiffs' theory of the case that Beyond Meat misled investors about investments in its QSR partnerships.

Even setting aside that the statements are not QSR-related, they do not support Plaintiffs' claims. For example, Plaintiffs acknowledge that Beyond Jerky is not a QSR product yet argue that the purported "doomed launch" of Beyond Jerky is "just another example how the Company was having serious issues creating a scaled up version of a product for a large customer." Opp. at 8. But neither the Complaint nor the Opposition identifies a single statement telling investors that Beyond Meat *could* produce Jerky at scale—much less that Defendants made such a statement when they already knew Beyond Meat could *not* produce Jerky at scale. Nor do Plaintiffs explain how a single statement disclosing that Beyond Meat signed a contract with a third-party to produce Jerky—the *only* statement made by Hardin, and the *only* one pertaining to the Company's Jerky-manufacturing operation—was in any way false or misleading. Compl. ¶ 133. To the contrary, Plaintiffs' own allegations demonstrate that on the very same earnings call, Hardin transparently disclosed the cost impact of the Company's large-scale launch of Jerky. *Id.* ¶¶ 129–30.

The Opposition also vaguely claims that Beyond Meat's "tone at the top" drove the Company to spend "millions" on "unusable machinery" and "overbuild[]" its network (Opp. at 9; Compl. ¶¶ 22–23), but Plaintiffs "must identify particularly and specifically more widespread problems" to support tone-at-the-top allegations.

16

*Karam v. Corinthian Colls.*, 2012 WL 8499135, at *10 (C.D. Cal. Aug. 20, 2012). Plaintiffs allege *zero facts* to sustain this theory.

Finally, Plaintiffs argue that the Company misled investors to believe that the QSR partnerships "would be a key driver" for the Company's 2022 revenue growth. Opp. at 8. But Plaintiffs cite only statements by *analysts*—not Defendants—and do not allege that *any* of the analysts even referenced statements by Defendants. *See* Compl. ¶ 102 (quoting Piper Sandler, BTIG, and J.P. Morgan analyst reports); *infra* Section II.B.3 (forward-looking statements).

### 3. Many of the Challenged Statements Are Inactionable As a Matter of Law

***Puffery.*** As this Court has held, statements touting a "great partnership" are "general statements of optimism that constitute[] corporate puffery." *Karinski*, 2020 WL 281716, at *11 (Fitzgerald, J.). Such statements are not actionable under the federal securities laws unless they are contradicted by facts actually known to the company at the time of the statement. *See id.* at *10; *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022) ("great business," "huge market opportunity," "tremendous," and "great" success were inactionable puffery); *Yoshikawa v. Exxon Mobil Corp.*, 2022 WL 4677621, at *15 (N.D. Tex. Sept. 29, 2022) (describing progress as "on track," "decent," "continuing," "very high quality," "within the range" was inactionable puffery).

Plaintiffs' cases in response are inapposite. In *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*, 2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018), "good progress" on a project was not inactionable puffery because four months earlier, the company had just instituted a three-month stop work order. Similarly, statements that the company was proceeding "according to plan" were actionable in *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *5–10 (C.D. Cal. Apr. 12, 2016), when the FDA had cited the company with numerous regulatory violations. *See also In re Quality Sys., Inc., Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017) (internal

17

conference calls and documents allegedly revealing contradictory information were provided to company prior to public statements); *Glazer*, 63 F.4th at 770–71 (touting strength of sales pipeline was undermined by twenty confidential witnesses who confirmed company had a "widespread practice" of classifying "illusory deals" as "committed"). Plaintiffs allege nothing of the sort here.

***Opinion Statements***. In response to Defendants' argument about the Complaint's nineteen opinion statements, Plaintiffs drop a three-sentence footnote that does not address *any* of the authority Defendants cite in their Motion, relying instead on a conclusory mischaracterization of the law that their scienter allegations save these claims. *See* Opp. at 12 n.5. Plaintiffs are wrong. *See* Mot. at 23 (plaintiffs must plead with particularity that Defendants *did not actually believe* opinion statements or omitted facts going to the basis of the opinion that renders the opinion misleading to a reasonable person in context). And their failure to substantively respond to Defendants' argument concedes the issue as a matter of law. *See Garcia*, 611 F. Supp. 3d at 933 n.17.

***Forward-Looking Statements***. Plaintiffs do not dispute that three of the challenged statements are forward-looking. *Compare* Mot. at 23–24 (citing Compl. ¶¶ 58, 70, 135), *with* Opp. at 12–15. Nor do they identify any allegations demonstrating that Defendants made *any* of the challenged forward-looking statements with "actual knowledge" that they were false. *See* Mot. at 25. Instead, Plaintiffs argue that several of the challenged statements are not forward-looking, Opp. at 13 (citing Compl. ¶¶ 65, 77–78, 84, 100–01, 123, 133), and that the risks of which Defendants warned had "already materialized. Opp. at 14. Plaintiffs are wrong.

First, the context of the challenged statements demonstrates that they *are* forward-looking. Brown's statement on the November 9, 2020 earnings call regarding Beyond Meat's relationship with McDonald's, Compl. ¶ 57, was made in response to an analyst's question about the *future* of Beyond Meat's relationship

with McDonald's. *See* Ex. 2. Brown stated that "everything that I've been doing and our research team has been doing is marching towards a particular outcome with them, and I feel good about that," while clarifying that "it's really up to [McDonald's] to say the extent of that where it's going to be, how it's going to be there." Compl. ¶ 57. These statements convey the Company's planned "objectives" for its relationship with McDonald's, while specifically cautioning investors that the *future* of Beyond Meat's relationship with McDonald's ultimately depends on what McDonald's decides to do. *See* 15 U.S.C. § 78u-5(i)(A)–(D) ("plans and objectives of management" are forward-looking).

The purported "present or historical facts" embedded in each of the challenged forward-looking statements also provide important context for Defendants' forward-looking statements and are thus inextricably intertwined with those statements. *See, e.g.*, *Wochos*, 985 F.3d at 1190 (non-forward-looking aspects must be "separable" from forward-looking aspects to be deemed "mixed" statement); Compl. ¶¶ 65 (explaining that investments were "made to prepare for the growth ahead"), 77 ("continuing to optimize" and "adding new lines" as part of ongoing strategy), 78 (explaining how company plans to use $1.1 billion investment), 84 (responding to question about projected manufacturing capacity, sales, price cuts), 100 (responding to question about forward-looking "guidance"), 101 (responding to question about "what has to happen" for Company to meet goals in "2.5 years"), 123 (expressing confidence in future "near-term headwinds"), 133 (using current initiatives to predict outlook for "remainder of the year").

The context of Beyond Meat's full statement about its relationship with Taco Bell also plainly reflects the Company was projecting the *future* of its relationship with Taco Bell. *See* Opp. at 13; Compl. ¶ 115. The entire challenged statement includes unequivocally forward-looking statements: "*we **look forward** to further announcements with them*." Compl. ¶ 115 (emphasis added). Plaintiffs cannot cherry-pick portions of a statement to challenge while ignoring important context in

19

the rest of the statement. *See, e.g.*, *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) (rejecting attempt to "selectively emphasize parts" of statement where context revealed statement was inactionable).

Even assuming that the forward-looking statements also conveyed a present or past fact, those statements are not actionable. Plaintiffs do not plead *any* facts that contradict or render misleading the non-forward-looking aspects of Defendants' statements. *See* Mot. at 15–21 (discussing Compl. ¶¶ 65, 77-78, 84, 100-101, 115, 123, 133). For example, the cancellation of a single test does not undermine the Company's "strong" relationship with Taco Bell, nor are there any facts to suggest that the partnership was not "continuing." *See supra* Section II.A.2 (addressing statements about QSR relationships and product testing). Plaintiffs do not dispute this, and their challenge should be rejected. *See Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *11 (N.D. Cal. Mar. 31, 2022) (rejecting plaintiff's "fragment[ed]" mixed-statement arguments where "no analysis" was provided). And several of the statements of present or past fact are inactionable puffery, opinions, or both. *Id.* at 21–23 (citing ¶¶ 65, 84, 100-101, 123, 133).

Second, Plaintiffs argue that the Company's extensive risk disclosures are insufficient because the risks "already materialized, but remained undisclosed to investors." Opp. at 14; Mot. at 23–25; *In re Astra Space, Inc. Sec. Litig.*, 2023 WL 4983156, at *7 (N.D. Cal. Aug. 2, 2023) (finding disclosures about the likelihood of success of product launches sufficient where they "equally appl[ied] to both the present and the future"). Beyond Meat made *numerous* disclosures about the inherent risks of scaling production, overbuilding capacity, excess inventory, delays in tests of launches, interruptions in operations caused by "product quality issues," and inability to *ever* sustain profitability. *See* Mot. at 23–24; App. B. Plaintiffs offer no facts (let alone particularized facts) that the associated risks had "already come to fruition" or "already happened." Opp. at 14. The cases Plaintiffs cite are thus inapposite. *See Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 879 (N.D. Cal. 2023)

20

(risk disclosures regarding product demand were inadequate because company already knew the volume of cancelled or limited contracts); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *8–9 (C.D. Cal. Feb. 27, 2015) (warning investors of compliance risks insufficient because the company allegedly already knew its product was noncompliant).

### B.   The Complaint Fails to Allege Scienter

None of the allegations, viewed independently or together, comes close to raising an inference—much less, a compelling inference—that Defendants engaged "an *extreme* departure from the standards of ordinary care" that presented "a danger of misleading buyers or sellers" that "is so *obvious*" that Defendants "must have been aware of it." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 952 (9th Cir. 2023) (emphasis in original). Plaintiffs do not respond to Defendants' argument that the Complaint improperly relies on group pleading. *See* Mot. at 26; Opp. at 15–25. And generic "tone-at-the-top" allegations are no substitute for pleading scienter with particularity for *each* defendant. *See Yoshikawa*, 2022 WL 4677621, at *3; *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 185 (5th Cir. 2019).

### 1.   Plaintiffs Do Not Allege Brown Concealed Information with Deliberate Recklessness or Intent

Plaintiffs do not allege *what* Brown knew, *when* he knew it, or how it contradicted his public statements, as they must. *See In re Enovix Corp. Sec. Litig.*, 2024 WL 349269, at *15 (N.D. Cal. Jan. 30, 2024). A complaint that fails "to connect the dots" of "*what* defendants knew *and when*" is "so devoid of allegations" that "there can be little inference, let alone a strong one, that defendants 'acted with the required state of mind' for 'each act or omission.'" *Id.* (emphasis added). Lacking any confidential witnesses or specificity as to Brown's knowledge, Plaintiffs resort to general allegations that QSR partnerships are a core operation, Brown was a hands-on CEO, and Brown made public statements about the Company's QSR partners. But Plaintiffs fall far short of the high bar for alleging a

21

strong inference of scienter, particularly where Plaintiffs acknowledge Brown did not sell his shares and they offer zero motive for fraud.

***Core Operations***.   Plaintiffs resort to the core operations doctrine to infer Brown's knowledge.  This attempt fails for two reasons.  First, the Complaint does not establish that QSR partnerships were so "critical to the business's *core operations*" that key corporate officers would have had detailed involvement in the minutiae of the Company's QSR-related operations.  *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014); *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111–12 (9th Cir. 2021) (plaintiffs must allege with specificity that defendants had "detailed involvement" in the "minutiae" of operations or include particularized allegations of their "actual access" to information).

Plaintiffs highlight the "importance" of scaling product launches with the Company's strategic partners," Compl. ¶ 175, and "integral" nature of "successful partnerships with behemoths like McDonald's and the YUM! Brands" to Beyond Meat's "financial health and overall survival," Opp. at 17, yet ignore all of the Company's *other* business lines.  *See, e.g.*, *Reckstin Family Tr. v. C3.AI, Inc.*, 2024 WL 734497, at *20 (N.D. Cal. Feb. 22, 2024) ("[E]ven significant features of a business are not necessarily 'core operations.'"); *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *19 (N.D. Cal. Dec. 18, 2017) (rejecting core operations allegations where plaintiffs pled no "particularized allegations about each defendant's access to the relevant information" impacting "critical core" piece of business).  In fact, as Plaintiffs acknowledge, Beyond Meat simultaneously was growing multiple *non-*QSR revenue streams during the Class Period—including its "foodservice segment ('mom-and pops')," "independent and smaller-chain regional restaurant customers," "large scale U.S. restaurants," and "retail markets," including grocery stores.  Compl. ¶¶ 47, 49(e)(i), 150, 159.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs' allegation that a potential nationwide McDonald's launch presented a large revenue opportunity paints an incomplete picture of McDonald's's importance to the Company, when compared to the Company's other QSR partners, foodservice relationships, and industries (like retail) globally.  *See* Compl. ¶ 25; *cf. Azar v. Yelp, Inc.*, 2018 WL 6182756, at *20 (N.D. Cal. Nov. 27, 2018) (local ad program comprised "significantly more than half" of all revenue); *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 946 (9th Cir. 2023) (magnitude of concealed information concerned more than a billion dollars); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016) (revenues inflated by 500% were the type of numbers that would not go unnoticed); *Todd*, 2016 WL 6699284, at *5, 13 (product "account[ed] for approximately *50%* of STAAR's revenue"); *Roberti*, 2015 WL 1985562, at *13 ("largest and most profitable division" was "core business segment"); *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *9 (N.D. Cal. Nov. 4, 2020) (CEO's "frequent[] travels" to company's "highest growth" and "third-latest" market demonstrated that market was a "core operation"); *In re Diamond Foods, Inc., Sec. Litig.*, 2012 WL 6000923, at *7, 12 (N.D. Cal. Nov. 30, 2012) (CFO "oversaw and directed accounting, and repeatedly demonstrated intimate knowledge of [product] accounting in particular"; CEO "approved how and when [product] payments were made").

Second, even assuming these QSR partnerships were a "core business" of Beyond Meat, Plaintiffs do not plead particularized facts sufficient to suggest Brown was involved in the minutiae of operations and manufacturing of QSR products, or that the purported issues were so prominent it would be "absurd" to suggest Brown did not know.  *See Prodanova*, 993 F.3d at 1111; *see also Ezzes v. Vintage Wine Ests.*, 2024 WL 895018, at *13 (D. Nev. Mar. 1, 2024) (requiring "detailed" allegations about "what conflicting knowledge [d]efendants supposedly had that would demonstrate intentionality"); *Ryan v. FIGS, Inc.*, 2024 WL 187001, at *8–13 (C.D. Cal. Jan. 17, 2024) (no scienter where plaintiffs failed to allege what

23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

executives purportedly knew about analytics that was inconsistent with company's public statements).

*"Hands On" CEO.*  Conclusory allegations that Brown "should have" known about the purported omissions are "insufficient 'to meet the stringent scienter pleading requirements of the PSLRA.'"  *In re Enovix*, 2024 WL 349269, at *15. Relying solely on an executive's position and assumed access to information cannot establish scienter.  *See Prodanova*, 993 F.3d at 1109.  The "assumption that officers have knowledge of certain information by virtue of their position within the company would reduce pleading scienter to boilerplate assertions," which would "defeat the PSLRA's requirement that scienter be pled with particularity."  *Ryan*, 2024 WL 187001, at *9 (internal quotations omitted).  This is especially true here, where Beyond Meat was no "small company."  *See Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *12 (N.D. Cal. Sept. 1, 2021); *Yoshikawa*, 2022 WL 4677621, at *4.  Beyond Meat is a leader in an innovative industry with products on shelves and menus in grocery stores, dine-in restaurants, and fast-food chains across the world.  *See* Compl. ¶¶ 82, 93, 110, 150.  Plaintiffs cannot rely on Brown's position and "repeated public statements"; they must plead particularized allegations tying Brown's statements to his "actual access to the disputed information."  *Prodanova*, 993 F.3d at 1111.

Plaintiffs allege that Brown visited two facilities on unspecified dates and urged employees to be careful with missing ingredients—but such vague and innocuous facts do not come close to the "hands-on" allegations courts have credited.  For instance, in *In re Diamond Foods*, 2012 WL 6000923, at *9–12, there were substantial and detailed allegations about a CEO's involvement in a fraudulent pricing scheme, including numerous first-hand accounts describing the CEO's instruction to "scrub" numbers to make earnings "look better."  Moreover, the CEO's approval was required to "shuffle" certain payments around, so these decisions could not have been made without his knowledge.  *Id.*  In *City of Miami*

24

*General Employees' & Sanitation Employees' Retirement Trust v. RH, Inc.*, 302 F. Supp. 3d 1028, 1044 (N.D. Cal. 2018), the CEO had the final word on orders, regularly inspected inventory, and regularly questioned staff about inventory. Thus, the CEO could not claim ignorance about a serious inventory shortage that would doom the launch of its new product line. *Id.* at 1043–44.

Plaintiffs' other authorities involve detailed allegations of executives' access to internal documents, attendance at weekly or monthly meetings, or frequent conversations about the topics in the challenged statements that would have revealed the purported fraud. *See E. Ohman J:or Fonder AB*, 81 F.4th 918, 939–41 (CEO closely monitored sales, reviewed detailed inventory and sales reports, and met with witnesses monthly); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 695–96, 705–07 (9th Cir. 2021) (executives' receipt of memorandum detailing data breach and consequences of disclosure prior to public statements showed actual knowledge); *In re Under Armour Sec. Litig.*, 2020 WL 363411, at *7 (D. Md. Jan. 22, 2020) (emails reflected personal awareness of questionable accounting practices); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1209–11 (W.D. Wash. 2009) (CEO received monthly risk reports, attended monthly committee meetings, issued internal emails; CFO received report with precise internal deficiencies and was directly informed about confidential witnesses about issues); *RH, Inc.*, 302 F. Supp. 3d at 1043 (CFO received weekly reports showing deficient inventory levels and weekly "CFO" package analyzing inventory shortage). Here, there are no allegations that Brown received or reviewed any relevant internal reports, memoranda, or emails regarding *any* of the challenged statement topics; attended frequent meetings regarding the same; or was directly or indirectly informed about Beyond Meat's purported scaling and manufacturing issues—let alone that he had access to any of this information at the time of the challenged statements.

Plaintiffs argue that Defendants waived the right to address Plaintiffs' double-hearsay allegations from a November 21, 2022 *WSJ* article about "'Brown's drive

to roll out new products on rushed timelines,'" relying on *Beatbox Music Pty, Ltd. v. Labrador Entertainment, Inc.*, 2021 WL 831017 (C.D. Cal. Jan. 12, 2021). *See* Opp. at 19. To the contrary, the failure to cite one specific allegation in a motion to dismiss is not failing to raise an issue. In *Beatbox*, the defendant raised a new, independent ground for dismissal in its reply. 2021 WL 831017, at *3. Here, Defendants do not raise any new theories or grounds for dismissal. The *WSJ* article, published after the Class Period, offers no time-and-place details about the QSR relationships at issue during the Class Period, and thus cannot shed any light on any defendant's state of mind at the time of the challenged statements. Compl. ¶ 160 (discussing irrelevant "veggie sausages" on grocery stores shelves or general complaints about Brown as CEO); *see* Mot. at 27.

**Lack of Insider Trading Allegations.** Contrary to Plaintiffs' strawman, Defendants do not argue that the lack of insider-trading allegations against Brown forecloses a finding of scienter as a matter of law; rather, the lack of stock sales seriously *undercuts* Plaintiffs' claimed inference. Mot. at 26. As courts have repeatedly stated, the "lack of stock sales can detract from a scienter finding" on a holistic inquiry. *See, e.g.*, *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *Veal v. Lendingclub Corp.*, 2020 WL 3128909, at *16 (N.D. Cal. June 12, 2020), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021). Plaintiffs do not dispute this authority. *See* Opp. at 20.

**Lack of Cogent Theory of Motive.** Finally, Plaintiffs argue that Brown's lack of motive to defraud is not fatal to their scienter theory because "foolish frauds" are prohibited under the PSLRA. Opp. at 21 (citing out-of-circuit authority). But courts need not accept nonsensical theories to support shaky allegations of scienter. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020); *see also In re Facebook*, 84 F.4th at 953 (even "head-scratching mistakes do[] not amount to fraud") (cleaned up). To determine whether Plaintiffs' scienter allegations meet the heightened pleading standards applicable here, the Court "must take into account

26

plausible opposing inferences" including whether the more innocent inference outweighs one of fraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Plaintiffs' scienter theory that Brown made promises he knew he could not deliver is simply "divorced from common experience." *Vander Ark v. HAF Corp.*, 2023 WL 6194393, at *9 (C.D. Cal. Sept. 6, 2023) (Fitzgerald, J.).

### 2. Plaintiffs Cannot Bootstrap Scienter With Nelson's and Hardin's Other Public Statements

Plaintiffs' arguments that Nelson's and Hardin's public statements about the Company's manufacturing and product launches raise a strong inference of scienter, Opp. at 23–24, fail for similar reasons that their arguments against Brown do. *See supra* Section II.B.1; *see also Ryan*, 2024 WL 187001, at *8 (finding "blanket" and "broad" "public statements of involvement" "do not rise to the level of specificity required to establish a strong inference of scienter"). Specifically, Plaintiffs fail "to connect the dots" of what Nelson and Hardin knew, when they knew it, or how it contradicted their public statements, and thus they fail to plead *any* inference of scienter, much less a strong inference. *In re Enovix*, 2024 WL 349269, at *15. Given that allegations that Defendants "made public statements," Opp. at 23, say *nothing* about their state of mind or culpability, Plaintiffs' claims should be dismissed with prejudice.

### 3. Plaintiffs Make No Showing of Hardin's Scienter

Aside from Plaintiffs' cursory argument about Hardin's public statements, they raise no other argument as to Hardin, effectively conceding that their claim against him fails. Plaintiffs do not allege that Hardin sold a single share of Beyond Meat stock during the alleged Class Period. Nor do they hypothesize a plausible motive for Hardin to join the Company mid-Class Period and mislead the market with his single challenged statement. The lack of *any* allegations as to Hardin is dispositive.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

#### 4.    **Nelson's Trading Does Not Establish Scienter**

The only other allegations as to Nelson—his stock sales—fall short of alleging a strong inference of scienter given the sales were not "unusual" or "suspicious." *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).  First, Plaintiffs tacitly admit the timing of his sales was not suspicious.  *See* Opp. at 22–23.[4]  Plaintiffs do not dispute that *all* of Nelson's sales occurred at relative low price points, his sales were made before *and* after his single challenged statement, or that it would not be unusual for an executive (like Nelson) to sell most of his shares before retiring.  Mot. at 30; Opp. at 22–23.  Second, Nelson's sales during the latter half of the Class Period (made prior to his retirement) were *not* substantially inconsistent with his trading practices compared to the first half of the Class Period:  he sold similar volumes of shares every few months.  *See* Ex. 1, at 5.  Plaintiffs' repeated incantation of Nelson's sales does not withstand scrutiny and cannot establish Nelson's scienter.

#### 5.    **Plaintiffs' Remaining Arguments Fail to Establish Corporate Scienter**

***News Agencies.***  Plaintiffs rely on the double hearsay allegations reported from unidentified former and current employees, as reported in *Bloomberg* and *WSJ*.  Opp. at 24.  As discussed *supra* Section II.A.2, the Court should not credit such allegations where, as here, they are not particularized and detailed.  *See Ng. v. Berkeley Lights, Inc.*, 2024 WL 695699, at *13 (N.D. Cal. Feb. 20, 2024) (finding short-seller report insufficiently detailed where it did not specify when sources were interviewed, the period of time former employees worked, or what the extent of their involvement was).  The allegations reported by *Bloomberg* on November 17, 2021,

---

[4] Plaintiffs' cited authorities, in contrast, involve allegations of unusually timed trades *and* trades that were out-of-step with the person's prior trades.  *See Karinski*, 2020 WL 281716, at *15 (sales occurred concurrently with the company's stock repurchases to prevent the price from crashing); *In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *5 (S.D. Ohio Sept. 29, 2023) (starting sales occurred at the price peak); *Lamartina v. VMware, Inc.*, 2023 WL 2763541, at *4 (N.D. Cal. Mar. 31, 2023) (sales occurred "just days" after important meetings that discussed sales).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS
CONSOLIDATED CLASS ACTION COMPLAINT

about the Company's chicken product say nothing about when or where these purported issues arose. *See* Compl. ¶ 107. The articles are silent on when the Company learned of the alleged issues, what information exactly (if anything) was conveyed, and whether that information contradicted any challenged statements about KFC or its product tests. The allegations from *Bloomberg*'s report on Taco Bell say even less. *Id.* ¶ 112 (two sentences). The February 3, 2022 *Bloomberg* article about Del Taco, which is not one of the alleged QSR partners, is irrelevant to the Complaint's allegations. *Id.* ¶ 118. Finally, the November 21, 2022 *WSJ* article, like the November 17, 2021 *Bloomberg* article, includes zero particularized facts showing when and where the issues occurred, repeats the same generalities about inefficiencies and Brown's leadership, and includes complaints about Beyond Meat's retail products (veggie sausages)—*not* its QSR products. *Id.* ¶ 164.

***Executive Departures.*** Plaintiffs do not explain why any Beyond Meat executives' resignations or terminations were "uncharacteristic" or "suspicious." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009). Executive departures made *months* after negative news, as here, will "never be as cogent or as compelling" as a more innocent explanation. *Id.*; *see also* Compl. ¶¶ 168–73. It is unclear why "the fact that both Ramsey and former CSO Bernie Adock were hired at the same time" and terminated "on the same date" two months after the disclosure of negative news would reveal anything "suspicious." Opp. at 25. In contrast, the executive departures in Plaintiffs' cited authority were contemporaneous with negative news, and are thus distinguishable. *See, e.g.*, *In re Banc of Cal. Sec. Litig.*, 2017 WL 3972456, at *8 (C.D. Cal. Sept. 6, 2017) (CEO resignation on the same day the SEC announced an investigation into the company's response to a news article); *Thomas*, 167 F. Supp. 3d at 1043 (resignations at the same time the SEC announced violations during ongoing investigation alone were weak but found sufficient when combined with other particularized scienter allegations). Indeed, the more compelling inference is that that companies with high

growth and expectations (and thus more pressure) naturally experience more turnover. *See Zucco Partners*, 552 F.3d at 1002.

### C.     Plaintiffs Fail to Plead Loss Causation

Plaintiffs wrongly contend that an earnings miss alone "can constitute loss causation." Opp. at 27 (cleaned up). "[E]stablishing loss causation requires more than an earnings miss or the market's reaction to a company's poor financial health generally." *In re Facebook*, 87 F.4th at 955 (internal quotations omitted). This is because an earnings miss, alone, establishes only that the "the market reacted to the purported 'impact'" of the miss, not "fraudulent acts themselves." *Id.* (holding that "disappointing" earnings performances "alone cannot satisfy shareholders' burden of pleading loss causation").

None of the purported corrective disclosures "corrected" anything about Defendants' earlier statements. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296, 1314 (S.D. Cal. 2020). A "corrective" disclosure is one that reveals "new facts" that render some aspect of the defendant's prior statements false or misleading. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). While disclosures need not be "mirror image[s]" of the prior misstatement, the later-revealed information still must sufficiently include facts that contradict defendant's earlier statements. *In re Semiconductor Mfg. Int'l Corp. Sec. Litig.*, 2023 WL 6290742, at *2 (9th Cir. Sept. 27, 2023) (declining to find news articles as corrective disclosures). Here, all of the articles, reports, or announcements—while negative—are entirely *consistent with*, and therefore not "corrective" of, the challenged statements. *See, e.g.*, *id.* (rejecting news article as corrective because it lacked "any purported facts contradicting" alleged statements); *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *7 (C.D. Cal. Feb. 6, 2014) (negative effect is not synonymous with corrective effect); *see also* C*ity of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *4 (D. Ariz. Jan. 11, 2023).

***Bloomberg Articles.*** The November 17, 2021 *Bloomberg* article reported scaling and formulation issues with the Company's chicken product. Compl. ¶¶ 104–08. Critically, Plaintiffs do not identify which statement this disclosure purportedly "corrected." Opp. at 28; *see also* Compl. ¶¶ 104–09, 205–07. Moreover, Beyond Meat has warned investors since 2020 about the inherent issues with rapid growth and scaling its products and potential interruptions in its facilities caused by product quality issues. App. B, at 5 ("We have grown rapidly . . . This anticipated growth and expansion of our business and our product offerings will continue to place significant demands on our management and operations teams . . . . If we do not effectively manage our growth, we may not be able to execute on our business plan . . . satisfy customer requirements or maintain high-quality product offerings . . . .").

Plaintiffs similarly do not explain how the December 10, 2021 *Bloomberg* article, Compl. ¶¶ 112, "corrected" any prior statement regarding the status of Beyond Meat's carne asada product or the Company's belief at the time that its partnership with Taco Bell was on positive footing. Opp. at 28. Finally, Plaintiffs never address how the February 3, 2022 *Bloomberg* article regarding Del Taco contradicts any of the challenged statements, which have *nothing* to do with Del Taco. *Id.*; *see also* Compl. ¶¶ 118–19, 211–12.

***J.P. Morgan Report.*** Next, Plaintiffs contend that the July 27, 2022 J.P. Morgan report that McDonald's "discontinued its U.S. test" (Compl. ¶ 137) was "corrective" merely because it "related" to "problems" the Company was having with production, quality, and scaling demands. Opp. at 29. But this "loss causation theory lumps together [thirty-seven] alleged misstatements." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021). Plaintiffs' alleged corrective disclosure cannot have possibly corrected all of those statements in "sufficient detail," as is required. *Id.* (rejecting plaintiffs' "lumping"

31

loss causation theory because allegations did not adequately and with particularity allege that these revelations caused the losses).

***Reduction in Global Workforce.***  Finally, Plaintiffs argue that the Company's October 14, 2022 announcement regarding its shift in focus towards obtaining positive cash flow were partial corrective disclosures for "similar reasons" that Beyond Meat's lower-than-expected earnings announcements were partial disclosures.  Opp. at 29.  Again, Plaintiffs do not explain how this event disclosed anything about a purported fraud, or why the resulting stock price decline was "proximately" caused by the purported fraud as opposed to any other factor.  *See id.*; Mot. at 36.  Loss causation cannot be established by claiming "where there is smoke, there must be fire."  *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017).  This is especially true where the bulk of the Class Period was impacted by an unprecedented, global pandemic, which devastated restaurants and fundamentally altered consumer spending trends in unpredictable ways.  *See Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *16 (D. Ariz. May 25, 2023) (rejecting loss causation where alternative causes were more compelling).

### D.    Plaintiffs' Section 20(a) and 20A Claims Fail

Failing to allege a primary violation, Plaintiffs cannot maintain their derivative Section 20(a) and 20A claims.  *See* Mot. at 36–37. Plaintiffs also do not dispute that Nelson and Hardin were not "control persons" during the time they were not at the Company, dooming the Section 20(a) claims for the challenged statements made during those respective periods.  *Compare id.*, *with* Opp. at 29 (failing to address control-person issue).

In addition to failing because Plaintiffs do not allege the specific material, nonpublic information Nelson had at the time he traded, Plaintiffs' Section 20A claim against Nelson must be dismissed for lack of contemporaneous trades.  *See* 15 U.S.C. § 78t-1(a).  The purpose of Section 20A's contemporaneous trading requirement "ensures that only private parties who have traded with someone who

32

had an unfair advantage will be able to maintain insider trading claims." *See Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993). Plaintiffs' Section 20A arguments urging the Court to disregard *SEB Investment*, 485 F. Supp. 3d 1113, are unpersuasive. As Plaintiffs' own authority recognizes, Section 20A's contemporaneous trading requirement ensures that parties who are harmed are not prohibited from bringing suit. *See Turocy v. El Pollo Loco Holdings, Inc.*, 2018 WL 3343493, at *14 (C.D. Cal. July 3, 2018). It follows that those who purchased shares at prices *lower than* the defendant's sale price are not harmed because "it is impossible that those trades occurred with defendant at an unfair advantage." *SEB Inv.*, 485 F. Supp. 3d at 1136. And Plaintiffs do not even attempt to explain how their purchases made **before** Nelson's alleged insider sales would disadvantage or harm Plaintiffs. *See* Opp. at 31; Mot. at 39. Thus, Plaintiffs' November purchases cannot be considered "contemporaneous" with Nelson's November 17–18 sales as a matter of law. *See, e.g.*, *SEB Inv.*, 485 F. Supp. 3d at 1135–36.

Several courts have agreed that a same-day or next-day standard "is the only reasonable standard given the way the stock market functions." *In re AST Rsch. Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995); *see, e.g.*, *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.*, 503 F. Supp. 2d 25, 47 (D.D.C. 2007) (collecting cases) (reasoning this standard is appropriate "where a large volume of securities are sold on a daily basis on a national exchange"); *In re Able Lab. Sec. Litig.*, 2008 WL 1967509, *27 (D.N.J. 2008) (adopting same-day standard for "publicly traded company with millions of outstanding shares"); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1205 (C.D. Cal. 2008); *Steamfitters Local 449 Pension Fund v. Alter*, 2011 WL 4528385, *13 (E.D. Pa. 2011). Here, Beyond Meat's stock changed hands approximately *18 million times per day*— almost 6.5 more times than the trading volume on February 23, 2022, which Plaintiffs concede was "unusually high." Compl. ¶ 214; *see also* Mot. at 38. Under

this standard, Plaintiffs cannot state a claim against Nelson based on his May 7–8 sales. Compl. ¶¶ 256–60.

## III. CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion to Dismiss.

Dated: March 22, 2024

Respectfully submitted,

LATHAM & WATKINS LLP
Michele D. Johnson
Heather A. Waller
Ryan A. Walsh

By: */s/ Michele D. Johnson*
Michele D. Johnson
Attorneys for Defendants
Beyond Meat, Inc., Ethan Walden
Brown, Mark J. Nelson, and Philip E.
Hardin

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Beyond Meat, Inc., Ethan Walden Brown, Mark J. Nelson, and Philip E. Hardin, certifies that this brief contains 8,268 words, which complies with the word limit set by court order dated December 6, 2023.  In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.


Dated: March 22, 2024                    By: */s/ Michele D. Johnson*
                                              Michele D. Johnson

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

35