ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ (147029)
LAURIE L. LARGENT (153493)
MATTHEW I. ALPERT (238024)
JOSEPH J. TULL (339956)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
llargent@rgrdlaw.com
malpert@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SASKATCHEWAN HEALTHCARE EMPLOYEES' PENSION PLAN, and MARIO COLATO,<br><br>                          Plaintiffs,<br><br>     vs.<br><br>BEYOND MEAT, INC., et al.,<br><br>                          Defendants. | Case No. 2:23-CV-03602-MWF(AGRx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>DATE:  November 25, 2024<br>TIME:    10:00 a.m.<br>CTRM:  5A, Hon. Michael W. Fitzgerald |

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................... 1

II.  LEGAL STANDARD ................................................................................... 3

III. ARGUMENT ............................................................................................... 3

A.   Defendants' Statements Were Misleading When Made ..................... 3

1.   Brown's Statements About Scaling Up Production for Beyond's New Products and Cost Reductions Misled Investors .......................................................................... 3

2.   Beyond's Denial in Response to *Bloomberg* Misled Investors .......................................................................... 8

3.   Brown's February 2022 Statements About Securing Permanent QSR Menu Placements Misled Investors ............... 9

B.   Defendants' Challenges to Their Misstatements Fail ...................... 10

1.   Defendants' Purported Risk Warnings Were Insufficient ........ 10

2.   Defendants' Challenges to the New Statements Fail .............. 10

C.   Scienter Is Sufficiently Pleaded for Brown (and Thus for Beyond) and the Court's Prior Order Finding Scienter Should Not Be Disturbed ................................................................. 12

D.   The AC Sufficiently Pleads Loss Causation .................................... 16

E.   Defendants Violated §20(a) .............................................................. 21

IV.  CONCLUSION .......................................................................................... 21

4873-0204-5934.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................... 3

*Berson v. Applied Signal Tech., Inc.,*
    527 F.3d 982 (9th Cir. 2008) ..................................................................................... 16

*Brown v. China Integrated Energy, Inc.,*
    875 F. Supp. 2d 1096 (C.D. Cal. 2012) ..................................................................... 16

*Crafton v. Powerwave Techs., Inc.,*
    2008 WL 11338622 (C.D. Cal. Apr. 17, 2008) ......................................................... 13

*Epstein v. World Acceptance Corp.,*
    203 F. Supp. 3d 655 (D.S.C. 2016) ............................................................................ 21

*ESG Cap. Partners, LP v. Stratos,*
    828 F.3d 1023 (9th Cir. 2016) ..................................................................................... 3

*Florida State Bd. of Admin. v. Green Tree Fin. Corp.,*
    270 F.3d 645 (8th Cir. 2001) ................................................................................ 8, 15

*Fuschak v. Dickinson,*
    2012 WL 13405996 (N.D. Cal. Feb. 7, 2012) ........................................................... 10

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.,*
    63 F.4th 747 (9th Cir. 2023) ................................................................................. 7, 11

*In re Alphabet, Inc. Sec. Litig.,*
    1 F.4th 687 (9th Cir. 2021) .................................................................................. 12, 15

*In re Apple Inc. Sec. Litig.,*
    2020 WL 2857397 (N.D. Cal. June 2, 2020) ........................................................ 11, 14

*In re Apple Inc. Sec. Litig.,*
    2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ................................................. 14, 15, 16

*In re BioMarin Pharm. Inc. Sec. Litig.,*
    2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ............................................................... 10

4873-0204-5934.v1

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ................................................................ 16, 17

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
   97 F.4th 1171 (9th Cir. 2024) .......................................................... 17, 18, 20

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
   791 F.3d 90 (D.C. Cir. 2015) ..................................................................... 19

*In re Impinj, Inc., Sec. Litig.*,
   414 F. Supp. 3d 1327 (W.D. Wash. 2019) ................................................. 17

*In re Iso Ray, Inc. Sec. Litig.*,
   189 F. Supp. 3d 1057 (E.D. Wash. 2016) .................................................... 8

*In re Lucid Grp., Inc. Sec. Litig.*,
   2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) ........................................ 11, 12

*In re Splunk Inc. Sec. Litig.*,
   592 F. Supp. 3d 919 (N.D. Cal. 2022) .................................................... 7, 19

*In re Vaxart, Inc. Sec. Litig.*,
   576 F. Supp. 3d 663 (N.D. Cal. 2021) ....................................................... 14

*Karinski v. Stamps.com, Inc.*,
   2020 WL 281716 (C.D. Cal. Jan. 17, 2020)...................................... *passim*

*Khoja v. Oreixigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ....................................................................... 7

*Kui Zhu v. Taronis Techs. Inc.*,
   2020 WL 1703680 (D. Ariz. Apr. 8, 2020).................................................. 18

*Leventhal v. Chegg, Inc.*,
   2024 WL 3447516 (N.D. Cal. July 17, 2024)............................................. 17

*Longo v. OSI Sys., Inc.*,
   2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ........................................... 12

*Loritz v. Exide Techs.*,
   2014 WL 4058752 (C.D. Cal. Aug. 7, 2014)............................................... 14

*Luo v. Spectrum Pharms., Inc.*,
   2024 WL 4443323 (D. Nev. Oct. 7, 2024)..................................................... 3

- iii -

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
    513 F.3d 702 (7th Cir. 2008) ................................................................................ 15, 16

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ............................................................................ 2, 17, 18

*Mulligan v. Impax Lab'ys, Inc.*,
    36 F. Supp. 3d 942 (N.D. Cal. 2014) ........................................................................ 11

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
    2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) ............................................................ 20

*Ohio Pub. Emps.' Ret. Sys. v. Meta Platforms, Inc.*,
    2024 WL 4353049 (N.D. Cal. Sept. 30, 2024) ......................................................... 13

*OPERS v. Fed. Home Loan Mortg. Corp.*,
    830 F.3d 376 (6th Cir. 2016) .................................................................................... 17

*Pampena v. Musk*,
    2024 WL 3678002 (N.D. Cal. Aug. 5, 2024) ............................................................ 12

*Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs.*
    *Ret. Sys. v. Amedisys, Inc.*,
    769 F.3d 313 (5th Cir. 2014) ............................................................................... 17, 21

*Roberti v. OSI Sys., Inc.*,
    2015 WL 1985562 (C.D. Cal. Feb. 27, 2015) ........................................................... 13

*Salzman v. ImmunityBio, Inc.*,
    2024 WL 3100274 (S.D. Cal. June 20, 2024) ........................................................... 15

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    2023 WL 6314939 (S.D.N.Y. Sept. 28, 2023) .......................................................... 15

*Special Situations Fund III QP, L.P. v. Marrone*
    *Bio Innovations, Inc.*,
    2018 WL 3207891 (E.D. Cal. June 29, 2018) ........................................................... 13

*Spitzberg v. Houston Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) .................................................................................... 17

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................................................... 3

- iv -

*Sudunagunta v. NantKwest, Inc.*,
2017 WL 8810760 (C.D. Cal. Sept. 20, 2017)............................................. 13, 15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ......................................................................................3

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) ..........................................................15

*Todd v. STAAR Surgical Co.*,
2016 WL 6699284 (C.D. Cal. Apr. 12, 2016)....................................................21

*Traer v. Domino's Pizza LLC*,
2023 WL 6369712 (C.D. Cal. June 29, 2023)....................................................13

*Twitchell v. Enovix Corp.*,
2024 WL 3522187 (N.D. Cal. July 23, 2024) ...................................................14

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
2013 WL 2247394 (C.D. Cal. May 9, 2013)......................................................13

*Weston v. DocuSign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023) ...................................................11, 12, 17

*Yanek v. Staar Surgical Co.*,
388 F. Supp. 2d 1110 (C.D. Cal. 2005).............................................................4

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*,
2024 WL 1327247 (N.D. Cal. Mar. 27, 2024) ...................................................20

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b) ......................................................................................................2, 21
§78t(a)......................................................................................................2, 21

- v -

4873-0204-5934.v1

**TABLE OF ABBREVIATIONS**

| ABBREVIATION | DEFINITION |
|---|---|
| ¶___ and ¶¶___ | Citations to paragraphs in the AC |
| AC | First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF 57) |
| App'x A | Appendix A attached to the Motion (ECF 60-2) |
| App'x B | Appendix B attached to the Motion (ECF 60-3) |
| Beyond or the Company | Beyond Meat, Inc. |
| Brown | Defendant Ethan Walden Brown |
| CEO | Chief Executive Officer |
| Class Period | February 25, 2021 through October 13, 2022, inclusive |
| COGS | Cost of Goods Sold |
| Defendants | Beyond and Brown |
| Exchange Act | Securities Exchange Act of 1934 |
| Ex. A | Exhibit A attached to the AC summarizing the alleged misleading statements in the AC (ECF 57-1) |
| Ex. E | Exhibit E *Bloomberg Law* article attached to the AC (ECF 57-5) |
| J.P. Morgan | JPMorgan Chase & Co. |
| KFC | KFC Corporation |
| McDonald's | McDonald's Corporation |
| Motion or Mot. | Defendants' Notice of Motion to Dismiss First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF 60) and Memorandum of Law in Support of Defendants' Motion to Dismiss First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF 60-1) |
| Order | Court's August 9, 2024 Order Granting Defendants' Motion to Dismiss Consolidated Class Action Complaint for Violation of the Federal Securities Laws (ECF 56) |

- vi -

4873-0204-5934.v1

| ABBREVIATION | DEFINITION |
|---|---|
| PepsiCo | PepsiCo, Inc. |
| Pizza Hut | Pizza Hut, LLC |
| Plaintiffs | Lead Plaintiff Saskatchewan Healthcare Employees' Pension Plan and additional named plaintiff Mario A. Colato |
| PSLRA | Private Securities Litigation Reform Act of 1995, codified at 15 U.S.C. §78u-4 |
| RJN | Request for Judicial Notice and Incorporation of Documents by Reference in Support of Defendants' Motion to Dismiss First Amended Consolidated Class Action Complaint for Violation of the Federal Securities (ECF 61) |
| QSR | Quick-service restaurant |
| *WSJ* | *The Wall Street Journal* |
| Yum! | Yum! Brands, Inc. |

- vii -

4873-0204-5934.v1

# I.   PRELIMINARY STATEMENT

During the Class Period, defendants Beyond and its CEO, Brown, misled investors about Beyond's strategic shift from its core refrigerated product lines (plant-based burgers and sausage) to new product offerings, including customized products for large QSRs and foodservice partnerships, like McDonald's, KFC, Pizza Hut, Taco Bell and PepsiCo, which was necessary to accelerate Beyond's sales growth and keep its stock price high.  Beyond's new product focus, and securing partnerships with these large QSR and foodservice companies, were part of Defendants' growth strategy to replace stagnant sales growth and weak financial results from Beyond's declining core beef and sausage product lines.  Defendants assured investors that Beyond was well-prepared for this product transition, and that Beyond was progressing on this new strategy.  However, Defendants concealed that Brown was entering into these partnership agreements not knowing how to cost-efficiently produce the products at scale without decimating Beyond's gross margins.  In reality, the new and customized products were significantly less profitable than Beyond's core offerings due to widespread scaling and manufacturing issues.

The truth about Defendants' failing new product strategy came out in a series of partial disclosures during the Class Period.  One included a November 2021 *Bloomberg* investigative article, based on the accounts of former employees, that exposed internal realities that contradicted Defendants' public statements, including significant ongoing scaling and formulation problems for the new products.  Additional disclosures in 2021 and 2022 surprised the market when Defendants admitted that Beyond's sales and gross margins had been decimated by skyrocketing costs due to Defendants' failure to have established manufacturing processes to cost-effectively commercialize and scale the new products.

The Court dismissed Plaintiffs' prior complaint due to insufficient allegations of falsity and, except as to Brown, failing to allege a strong inference of scienter.  Contrary to Defendants' claim, Plaintiffs' AC addresses these deficiencies in several

- 1 -

significant ways. ***First***, as to the Court's "puzzle pleading" concern, Plaintiffs reduced the number of alleged misstatements from 37 to 14. ***Second***, Plaintiffs eliminated each of the statements, or the parts thereof, the Court found to be non-actionable puffery, opinion or protected by the PSLRA's safe harbor. ***Third***, as to the 14 statements now alleged – 12 of which the Court has already deemed actionable[1] along with two new statements – the AC tethers these representations to the contemporaneous factual allegations showing why each statement was misleading when made. Defendants' challenges to these statements fail because they miscast the central issue: that they concealed Beyond's inability to ***cost-effectively*** commercialize and scale its new and customized products. In fact, shortly after the Class Period, Defendants told investors that Beyond was shifting focus back to its core refrigerated product lines, effectively abandoning Defendants' new product strategy and strategic partnerships, due to production inefficiencies and declining gross margins.

***Fourth***, the AC includes as exhibits the investigative articles from *Bloomberg* and *WSJ* that corroborate Plaintiffs' allegations. ***Fifth***, the two remaining defendants are Beyond and Brown. Given the Court's prior ruling, Plaintiffs properly alleged scienter as to Brown and Defendants have not offered any compelling reason to disturb the Court's Order. *See* Order at 30 ("[G]ranting inferences to Plaintiffs, the Court views scienter as being sufficiently pled [as to Brown] through reliance on the [core operations] doctrine.").[2]

Properly crediting Plaintiffs' allegations and applying well-settled law, the AC sets forth viable claims under §§10(b) and 20(a) of the Exchange Act against Defendants.

---

[1] *See* Order at 22 ("If a statement is not listed or a portion is not grouped, it is actionable.").

[2] Unless otherwise noted, citations are omitted, emphasis added.

- 2 -

4873-0204-5934.v1

## II.    LEGAL STANDARD

A Court must "accept all factual allegations in the complaint as true" and "assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 326 (2007).[3] A complaint need only contain sufficient facts to state a claim that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1035 (9th Cir. 2016) ("[A plaintiff] need not prove its case at the outset.  Rather, it has to provide a narrative of fraud – facts which, if true, substantiate an explanation at least as plausible as a nonfraudulent alternative.").  In deciding plausibility, a Court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Dismissal is warranted only when a defendant's alternative explanation is so convincing that plaintiff's claim is implausible.  *See Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).

## III.    ARGUMENT

### A.    Defendants' Statements Were Misleading When Made

#### 1.    Brown's Statements About Scaling Up Production for Beyond's New Products and Cost Reductions Misled Investors[4]

Throughout the Class Period, Defendants misled investors about Beyond's strategic transition from its core refrigerated product line to new product offerings, including customized products for large QSRs and foodservice partnerships, assuring investors that Beyond was actively scaling up production to meet these new product demands.  Brown publicly touted investments in infrastructure, overcoming technical

---

[3] Plaintiffs do not object to Defendants' request that the Court judicially notice the documents referenced in Defendants' RJN, so long as it is "for the limited purpose that Defendants specify in their RJN." Order at 14.  Plaintiffs do, however, object to App'x A and B as "extension[s] of the dismissal argument that defendants wish the court to consider and resolve but apparently did not have space to specify in the brief itself." *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *6 (D. Nev. Oct. 7, 2024).

[4] *See* Ex. A (Statements 1-7, 9-10, 12).

- 3 -

challenges, and optimizing production processes, while also lauding cost reductions and improvements in production efficiency. As discussed below, however, these statements misleadingly portrayed Beyond's ability to handle large-scale partnerships and control costs, and concealed that the new products were far less profitable than Beyond's core products, due to widespread scaling and manufacturing problems. *See Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1121 (C.D. Cal. 2005) (holding that falsity sufficiently alleged "because Defendants failed to disclose problems with their manufacturing facilities"). Brown claimed that:

- *Statement 1* – the McDonald's and Yum! agreements "**are prime examples of what we've been scaling and preparing for**."

- *Statements 2, 6, 10* – Beyond strategically planned, and aligned scaling investments, for the QSR partnerships, stating: "**[W]e're not doing those in a hope and a prayer**. We're doing this as we put together some of the most powerful partnerships in the world, whether it's a Pepsi deal we announced, whether it's Yum!, whether it's McDonald's"; Beyond's capital spend "**gives us the opportunity to continue to move at a pace that matches the [QSR] opportunity**"; and Beyond's investments "**[were] not founded on hopeful thinking, but rather are the result of planning against key partnerships, market development initiatives and other opportunities**."

- *Statements 4-5* – Beyond's scaling up efforts included "**continued improvements in throughput across our manufacturing network**," and "**continuing to optimize commercial production at the Pennsylvania plant we acquired last year in support of strategic QSR customers**."

- *Statement 9* – Beyond had "**overc[o]me numerous technical challenges**" to ensure that it was meeting the demands of its QSR customer.

- *Statements 3, 7, 12* – "we're going to bring a lot of cost out of our production model. **And you're starting to see us do that, whether it's in the facility we just purchased in Pennsylvania**"; "**you see a steady improvement in the COGS structure**"; and Beyond did "**not expect these higher [production] costs to persist indefinitely**."

- 4 -

4873-0204-5934.v1

These statements were misleading when made.[5] The facts alleged in the AC demonstrate that by the beginning of the Class Period, Beyond could not cost-efficiently produce or formulate new products at scale to meet the demands of its major QSR and foodservice partnerships. ¶¶23-59, 67, 72, 75, 85, 87. When Brown, on behalf of Beyond, was entering into QSR partnerships just before the Class Period, he knew Beyond was not prepared to fulfill them because Beyond lacked the production processes to commercialize and cost-effectively scale either new or customized products for these key partners. ¶¶25, 48-49, 50-51, 57. Brown rushed to secure these high-profile deals before knowing how Beyond would produce the new products at scale, including how, or if, prototype formulations could be scaled up. ¶¶48, 50-51, 57. Three published investigative articles, relying on the accounts of several internal Beyond sources, confirm these allegations. *Id.*

Brown's efforts to lock in these deals before establishing how Beyond would manage large-scale production was causing internal operational chaos and leading to substantially increased costs for these new products. ¶¶27-36. While Beyond's existing production processes worked for manufacturing its core refrigerated products, it was not equipped to commercialize or cost-effectively scale new products for companies like McDonald's and Yum! or its PepsiCo partnership. The AC details that Beyond was using disjointed, expensive production processes because its existing processes were insufficient. ¶¶27-36, 58. The AC also describes that by the start of the Class Period, poor staffing, production inefficiencies, and inventory mismanagement at Beyond's DeVault plant – specifically acquired to scale production for Beyond's partnerships – were driving up costs instead of reducing them. ¶¶37-39, 67(c), 72(a).

---

[5] Defendants incorrectly assert that statements 2 and 3 in the AC (*i.e.*, statements 17 and 19 in the previous pleading) were held inactionable. *See* Mot. at 11. Plaintiffs did not bold or italicize – and thus did not allege to be misleading – the portions of those statements the Court held were inactionable opinion or puffery. *See* Order at 26; ¶¶65-66; Ex. A at 2.

- 5 -

4873-0204-5934.v1

These undisclosed problems were eroding margin profiles on the new and customized products and were making the products cost prohibitive to Beyond's QSR customers. *See Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *12 (C.D. Cal. Jan. 17, 2020) (holding that defendants "had a duty to disclose adverse information that cut against [disclosed] positive information"). For example, Beyond was forced to use a disjointed production process for a Pizza Hut pepperoni product. ¶28. The July 21, 2022 *Bloomberg* article confirmed that "Pizza Hut balked at the high price of the pepperoni and has expressed doubts about Beyond's ability to produce it at commercial scale, former employees with knowledge of the matter told Bloomberg." ¶58. In the end, Beyond Pepperoni was never made a permanent menu item at Pizza Hut. As the Class Period progressed, Defendants publicly admitted that the new products for its large partnerships were negatively impacting margins because production was done in an "expensive and inefficient manner" and Beyond had not yet established manufacturing processes for scaling. ¶115.

In addition to the production scaling problems, the AC describes formulation problems Beyond experienced in trying to meet its partners' demands. ¶¶40-45, 59. Internally, Beyond failed to recreate early prototypes of its new and customized products at scale at Beyond's manufacturing facilities. *Id.* Detailed articles from *WSJ* and *Bloomberg* corroborate these allegations. ¶¶53-59. For example, *Bloomberg* reported in November 2021 that, according to multiple former employees, Beyond's launch of its line of chicken tenders for KFC was plagued by "significant internal problems around formulation – from confusion and misalignment to belated decision making – leading to corresponding production delays." ¶54. After an initial test with KFC in 2019, Beyond could not scale production to meet KFC's product or price requirements. ¶44. The November 21, 2022 *WSJ* article also reported that with regard to Beyond Jerky – the new product Beyond was producing for its PepsiCo partnership – current and former Beyond employees and company emails confirmed "Beyond struggled to re-create an early lab-crafted version in bulk at plants." ¶59.

- 6 -

4873-0204-5934.v1

Each of the above plausible allegations sufficiently illustrates that Brown's statements assuring investors Beyond was actively scaling up production and reducing costs to meet the demands of its major QSR and foodservice partnerships – *i.e.*, ¶¶64-66, 69-71, 74, 84, 110 – were misleading when made. *Cf. Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 769 (9th Cir. 2023) ("Plaintiffs have met their burden under the PSLRA by stating with particularity the facts supporting each of their beliefs as to why the challenged statements were false or misleading. Defendants' argument that Plaintiffs alleged 'insufficient particularized facts' as to the sales pipeline statements asks the court to impose an impossibly high burden on securities action plaintiffs."). In truth, Beyond lacked the production processes needed to cost-effectively commercialize and scale new and customized products during the Class Period.

Defendants' challenges to the AC's falsity allegations fail. The AC never alleges that Defendants' statements "guaranteed the success of Beyond's investments." Mot. at 13. Rather, the AC alleges that Defendants' public statements concerning Beyond's investments misleadingly reassured investors that the investments were reducing production costs and improving manufacturing. ¶¶66, 69-70. The truth, however, was that undisclosed production inefficiencies were adversely impacting new product sales and margins. *See, e.g.*, ¶¶27-30, 37-39.

Similarly, Defendants' disputed factual claim that "Beyond eventually did scale production" for McDonald's and KFC does not negate falsity. Mot. at 12; *see also id.* at 14.[6] Defendants' reliance on "nationwide tests" conducted in 2022 (*id.* at 14) fails to address the core issue: Beyond was unable to meet its QSR partners' requirements for both formulation and cost-efficiency. In fact, the January 2020 KFC test was

---

[6] Defendants' attempts to raise factual disputes to challenge falsity fail. *See In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 946 (N.D. Cal. 2022) ("The adequacy of the disclosures Defendants point to is subject to a reasonable dispute, and **the Court may not resolve factual disputes at the pleading stage**.") (citing *Khoja v. Oreixigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018)).

4873-0204-5934.v1

Beyond's fourth attempt in more than a two year period to test a chicken product for KFC, and the McDonald's test was limited to 600 of McDonald's 13,000 U.S. locations.  The AC also alleges that because Defendants could not cost-efficiently meet their QSR partners' product specifications, Beyond was *not* advancing from tests to permanent menu launches.  ¶114.  During test trials with McDonald's and Yum! restaurants, Beyond's customized products not only failed to meet the QSR customer requirements, they were also too expensive compared to conventional protein-based menu items.  *Id.*  The July 2022 *Bloomberg* report corroborates these allegations.  *See* Ex. E.  Based on the accounts of 11 people with knowledge, *Bloomberg* reported that the January 2022 KFC launch was delayed and short on product because of production inefficiencies.  *Id.* at 5.  As a result, the estimated cost of goods on the KFC chicken product was about 40%, compared with 30% to 32% for real chicken.  *Id.*  Indeed, Beyond's failure to secure a place on either McDonald's or KFC's permanent U.S. menus only further vitiates this "innocence by hindsight" argument.  *In re Iso Ray, Inc. Sec. Litig.*, 189 F. Supp. 3d 1057, 1076 (E.D. Wash. 2016) (quoting *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 662 (8th Cir. 2001)).  Notably, shortly after the Class Period in November 2022, Defendants admitted to abandoning their new product strategy and downsizing their strategic partnerships, due to production inefficiencies that adversely impacted gross margins, returning instead to a focus on core refrigerated products.  ¶¶126-129.

### 2. Beyond's Denial in Response to *Bloomberg* Misled Investors[7]

Defendants' outright denial of Beyond's internal scaling and commercialization issues in response to *Bloomberg*'s November 17, 2021 exposé was misleading. Defendants wrongly claim that the denial is not deceptive because it omits mention of either "cost" or "efficiency."  Their public disavowal that "*[t]his is not a question of*

---

[7]   *See* Ex. A (Statement 11).

- 8 -

4873-0204-5934.v1

*internal problems with formulations or resulting production problems,*" omitted the very problems – escalating costs, product delays, up to 50% waste, and dissatisfied QSR partners – that were increasing costs, driving down product margins, and harming new product launches. ¶95. Therefore, Plaintiffs sufficiently allege Defendants' denial was misleading.

### 3. Brown's February 2022 Statements About Securing Permanent QSR Menu Placements Misled Investors[8]

Contrary to Defendants' claim, the AC alleges contemporaneous facts showing Brown's February 2022 statements misled investors about QSR "permanent menu placements" and "full launches." ¶¶112-113. Beyond's disjointed production processes for customized QSR products were increasing product costs and causing its partners to refuse the high prices and question Beyond's ability to produce at commercial scale. ¶¶31-32, 58, 114. After an August 2021 small-scale test of a pepperoni product for Pizza Hut – produced through a costly and highly inefficient process – Yum! balked at the product price and expressed serious concern about Beyond's ability to scale the product for broader distribution. ¶¶31-32, 58. The July 2022 *Bloomberg* report also confirms that the cost of goods for the Beyond Fried Chicken product tested at KFCs in January 2022 was approximately 8% to 10% higher than for real chicken due to production inefficiencies, which made the product cost prohibitive. Ex. E at 5; *see also* ¶44. Based on these facts, Brown's statements to investors about securing permanent QSR menu placements and full launches were misleading when made because Beyond could not cost-efficiently meet their QSR partners' product specifications, which was critical in advancing these products from tests to permanent menu launches. ¶114.

---

[8]  *See* Ex. A (Statements 13-14).

- 9 -

4873-0204-5934.v1

**B.    Defendants' Challenges to Their Misstatements Fail**

    **1.    Defendants' Purported Risk Warnings Were Insufficient**

None of the purported risk warnings cited by Defendants are "targeted or tailored to cautioning investors" that Beyond could not cost-effectively manufacture and commercialize these new products, including for its massive QSR partners, without decimating their then-current gross margins, thereby making this new strategic shift (a change from its highly profitable core products) profitable for Beyond. *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *8 (N.D. Cal. Jan. 6, 2022); *see also* Mot. at 8-9, 17.[9]

    **2.    Defendants' Challenges to the New Statements Fail**

As Defendants admit, an opinion can be actionable if it omits facts going to the basis for the opinion that makes the representation misleading to a "reasonable person reading the statement fairly and in context." Mot. at 16. Statement 8 was made in a November 10, 2021 press release from Beyond, wherein Brown made misleading statements regarding "scaling products and infrastructure" for Beyond's QSR partners and its investments "in innovation, commercialization, and production capabilities." ¶82. The AC alleges that regarding Statement 8, Brown's representation within this press release that Beyond was "***steadily executing against its vision***," materially omitted that Beyond lacked cost-efficient processes to commercialize and scale new products for its vital QSR partners without "causing the margin profiles on these new and customized products to erode." *See* ¶83. The AC does not allege – nor is it required to – that Beyond's "ongoing attempts to scale production and reduce costs would ultimately prove unsuccessful." Mot. at 17. Rather, it sufficiently alleges that

---

[9]    Defendants' previous motion to dismiss, ECF 42-1 at 13-14, also referenced purported risk warnings (several of which are repeated verbatim in the Motion). Given that the Court's Order did not dismiss any of the actionable misstatements (re-alleged in the AC) because of these purported warnings, it can be presumed that the Court considered them but found them to be unpersuasive. *See Fuschak v. Dickinson*, 2012 WL 13405996, at *1 (N.D. Cal. Feb. 7, 2012) ("Anything not discussed [in the order of dismissal] was implicitly rejected.").

- 10 -

4873-0204-5934.v1

Brown knew at the time that, based on the undisclosed facts in ¶83, his public statement to investors that Beyond was "steadily executing" its vision with respect to its QSR partnerships was materially misleading. *See Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 881 (N.D. Cal. 2023) (upholding defendants' purported statement of opinion as actionable); *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *26 (N.D. Cal. June 2, 2020) ("*Apple I*") ("Even when framed as an opinion, a reasonable investor 'expects not just that the issuer believes the opinion (however irrational), but that it fairly aligns with the information in the issuer's possession at the time.' Plaintiff adequately alleges that [CEO Tim] Cook's statement did not align with the information he possessed at the time and was therefore misleading.").[10]

Statement 12, "***[w]e do not expect these higher costs to persist indefinitely***," is also actionable. ¶110. When Brown publicly reassured investors that Beyond's high product costs for its new products were temporary and that Defendants "do not expect these higher costs to persist indefinitely," the AC explains in ¶111 why the material facts Brown omitted made his statement materially misleading. Investors were never told that, at the same time of this misrepresentation, Brown knew, for example, that

---

[10]  Asking the Court to assess their misstatement "in a vacuum," Defendants claim Statement 8 (*i.e.*, ¶82) is "non-actionable puffery" without any factual or legal support, or referencing the context in which this material misrepresentation was made. *Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014); Mot. at 16. This misrepresentation was made within Beyond's press release as part of Brown's statement concerning Beyond's "scaling products and infrastructure for our strategic quick serve restaurant partners, bringing new product to retail markets, [] investing in innovation, commercialization, and production capabilities." ¶82 (alteration in original). Investors cared about these crucial topics (specifically mentioned in an official Beyond press release), and therefore, it can hardly be gainsaid that Brown's reference to Beyond's steady execution against its vision of becoming "tomorrow's global protein company" is immaterial puffery. *See Glazer*, 63 F.4th at 770-71 (rejecting defendants' argument that "phrases such as 'tracking very well' or 'very large pipeline' are nonactionable because they do not convey concrete, verifiable facts" and holding that many of the misstatements were material in light of the fact that they "were made in response to specific questions asked by financial analysts"); *In re Lucid Grp., Inc. Sec. Litig.*, 2024 WL 3745605, at *6, *20 (N.D. Cal. Aug. 8, 2024) (holding that statements like "we have continued to deliver against our time line and with the highest standard of quality" and "[w]e are taking steps to mitigate these challenges" were neither opinions nor puffery as they "convey[] concrete facts about matters affecting the core of Lucid's business").

- 11 -

Beyond relied on fragmented and inefficient production processes and that their then-current approach considerably accelerated costs at every stage, from processing and transportation to warehousing – thereby significantly reducing Beyond's profit margins on these bespoke product lines for its QSR partners. *Id.* This undisclosed information made his purported opinion both actionable and misleading.

Neither of the misleading portions of Statements 8 or 12 are protected as forward-looking under the PSLRA's Safe Harbor. For example, in Statement 8, Brown states that the "we ***are steadily executing***" – a clear representation of then present-fact. ¶82; *see Weston*, 669 F. Supp. 3d at 874-75; *Lucid*, 2024 WL 3745605, at *17 (statement "we have continued to deliver against our time line and with the highest standard of quality" not forward-looking). Moreover, because both Statements 8 and 12 misleadingly omitted then-present facts, neither are protected as forward-looking under the PSLRA. *See Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at *8 n.6 (C.D. Cal. Mar. 31, 2021). Finally, none of the purported cautionary language cited by Defendants immunizes their actionable, materially misleading statements. *See* §III.B.1. at 10, *supra*.

### C.    Scienter Is Sufficiently Pleaded for Brown (and Thus for Beyond) and the Court's Prior Order Finding Scienter Should Not Be Disturbed[11]

In its Order, the Court held that for Brown, "***the Court views scienter as being sufficiently pled*** through reliance on the [core operations] doctrine." Order at 30. Nothing has changed that would undermine the Court's ruling just over two months ago, and "'[u]nder the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case."'" *Pampena v. Musk*, 2024 WL 3678002, at *2 (N.D. Cal.

___

[11]   Defendants do not dispute that if the Court reaffirms its prior holding of Brown's scienter, his fraudulent state of mind can be imputed to Beyond. *See* Mot. at 22. Therefore, because the Court already ruled that the allegations of Brown's scienter are sufficient, the allegations of Beyond's corporate scienter should similarly be upheld. *See Karinski*, 2020 WL 281716, at *17; *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021).

4873-0204-5934.v1

Aug. 5, 2024); *see also Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *8, *10 (C.D. Cal. May 9, 2013) (applying the "law of the case" doctrine to the court's previous ruling upholding plaintiffs' scienter allegations at the pleading stag).  And nothing in Defendants' current Motion comes close to suggesting the Court's previous holding on scienter was "clear error" and thus, should be revisited. *Traer v. Domino's Pizza LLC*, 2023 WL 6369712, at *2 (C.D. Cal. June 29, 2023); *see also Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 2018 WL 3207891, at *2 (E.D. Cal. June 29, 2018).  Nonetheless, the AC's pleaded facts demonstrate why it would be "absurd" to suggest that Brown, the uncontroverted hands-on CEO of Beyond, would not be aware of the undisclosed contemporaneous facts that made Defendants' Class Period statements at issue here materially misleading.  *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *12-*13 (C.D. Cal. Feb. 27, 2015).  Brown's own public statements confirm as much.  For example, Brown told *Time Magazine*: "We innovate very quickly, we commercialize at a rate that I need to match that innovation, and ***that's . . . what I'm working on***."  ¶135; *see also* ¶137.  Brown's public touting of his "personal involvement" in the Company's commercialization and innovation of its key products supports the strong inference of scienter this Court already upheld.  *Sudunagunta v. NantKwest, Inc.*, 2017 WL 8810760, at *12 (C.D. Cal. Sept. 20, 2017); *Ohio Pub. Emps.' Ret. Sys. v. Meta Platforms, Inc.*, 2024 WL 4353049, at *15 (N.D. Cal. Sept. 30, 2024); *Crafton v. Powerwave Techs., Inc.*, 2008 WL 11338622, at *7 (C.D. Cal. Apr. 17, 2008).  Brown also told analysts and investors that Beyond's relationships with its two largest QSR partners were "prime examples of what we've been scaling and preparing for" and told the market about the "numerous technical challenges" the Company had to overcome to produce faux-pepperoni for Pizza Hut.  ¶¶64, 84.  Statements like these conveyed that Brown was intimately involved in the inner workings of the Company he founded and helmed as its CEO.  Thus, it would be borderline ludicrous to suggest that he would somehow be unaware of major issues relating to Beyond's ability to

- 13 -

scale and commercialize its new line of products for its largest and most significant customers (aka the QSR "whales") and that those problems were cannibalizing Beyond's ever-important gross margins.  *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *9 (N.D. Cal. Nov. 4, 2020) ("*Apple II*") ("Finally, plaintiff adequately alleges that the iPhone presents a 'core operation' of Apple's business, as the Company's most important product that accounts for more than 60% of Apple's sales."); *see also Twitchell v. Enovix Corp.*, 2024 WL 3522187, at *13 (N.D. Cal. July 23, 2024) ("Whether or not the Fab-1 equipment was performing to specification at the factory was information of such importance 'that it would be absurd to suggest that top management was unaware of [it].'"); *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663, 673 (N.D. Cal. 2021) (similar).

The AC also alleges that Brown not only visited Beyond's manufacturing facilities and discussed with employees production and testing of the Company's products, but was also directly involved when problems arose – such as when McDonald's, one of Beyond's biggest QSR partners (if not the most important), found wood fragments in the McPlant burger during the trial phase.  ¶¶133-134; *see also Apple I*, 2020 WL 2857397, at *26 ("[I]t is simply implausible that [CEO Tim] Cook would not have known that iPhone demand in China was falling mere days before cutting production lines."); *Loritz v. Exide Techs.*, 2014 WL 4058752, at *13 (C.D. Cal. Aug. 7, 2014) (similar).  It is completely plausible – and as cogent and compelling as any alternative inference – that as a hands-on CEO who toured facilities and met with employees and other executives to discuss problems with Beyond's key retail and QSR-related products, Brown would be aware that Beyond's serious and undisclosed problems commercializing and scaling the Company's new line of products for these QSR "whale" clients was severely impacting the Company's profitability.  Therefore, a holistic review of facts alleged in the AC related to Brown's actions and his own public statements, *see* ¶¶132-137, reinforces the Court's ruling as to Brown's scienter.

- 14 -

Defendants resurrect the argument from their previous motion that any inference of scienter is somehow diminished because the AC does not plead information from confidential witnesses or allege that Brown sold stock and profited from the fraud. *See* ECF 42-1 at 9, 26; Mot. at 19. Simply put, in this case, the "lack of allegations regarding motive do not defeat an inference of scienter under a holistic analysis." *Apple II*, 2020 WL 6482014, at *13. The Court rejected this defense when it held that Plaintiffs sufficiently pleaded Brown's scienter. Order at 30. Courts in the Ninth Circuit hold that "[a]llegations of suspicious stock sales or information from confidential witnesses are not needed where, as here, other allegations in the complaint raise a strong inference of scienter." *Alphabet*, 1 F.4th at 707; *see also Sudunagunta*, 2017 WL 8810760, at *12; *Salzman v. ImmunityBio, Inc.*, 2024 WL 3100274, at *12 (S.D. Cal. June 20, 2024) (rejecting defendants' argument that scienter was undermined by an "absence of stock sales" and an individual defendant's "personal investment of an additional $300 million into ImmunityBio"). Also, given Brown's role as the public face of the company he founded (*see, e.g.*, ¶135) and its chief cheerleader to analysts and investors, Beyond's CEO's lack of stock sales could stem from "a desire to demonstrate belief in the company's future to a desire to avoid criminal liability by trading on material non-public information." *Sjunde AP-Fonden v. Gen. Elec. Co.*, 2023 WL 6314939, at *11 (S.D.N.Y. Sept. 28, 2023); *see also Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016) ("Indeed, there are several explanations for why an individual defendant would not sell stock even if she knew about false financial statements, such as a desire to avoid drawing the market's attention to the problem.").

Additionally, that Brown (or Beyond) may have not ultimately financially profited from the fraud does not shield them from liability, since "[t]he ultimate profitability of a course of conduct is not conclusive of intent" and a court cannot "infer innocence by hindsight because the alleged misdeeds did not pay off." *Green Tree*, 270 F.3d at 662; *see also Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 513 F.3d

- 15 -

702, 710 (7th Cir. 2008) ("The fact that a gamble – concealing bad news in the hope that it will be overtaken by good news – fails is not inconsistent with its having been a considered, though because of the risk a reckless, gamble."); *Apple II*, 2020 WL 6482014, at *13 n.12 (citing *Makor*, 513 F.3d at 710)).

Defendants' other attempts to vitiate the AC's allegations of Brown's (and therefore Beyond's) scienter are equally unavailing.  For example, the AC never alleges that "critiques of Brown's management style [bear] on his truthfulness." Mot. at 20.  The facts alleged about Brown's management style, *i.e.*, ¶¶47-50, demonstrate that he was "hands-on to the point where he dominated the Company and was personally involved in Beyond's product development as the Company experienced the issues described [in the AC]."  ¶46.  This type of direct involvement in the minutiae of his company's product commercialization, manufacturing, and prototype/sample testing for potential and actual clients bolsters this Court's earlier finding of Brown's scienter.  And given how financially vital it was that Defendants satisfy Beyond's QSR clients with its new, bespoke product lines for each QSR's respective brands, it "strains credulity" to argue that Brown would not be aware of serious issues plaguing Beyond's scaling, commercialization, and profitability of these related products. *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1123 (C.D. Cal. 2012); *see also Apple II*, 2020 WL 6482014, at *8 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. 2008)).

### D.    The AC Sufficiently Pleads Loss Causation

Defendants' repeated argument that in order to properly demonstrate loss causation, Plaintiffs must plead that a disclosure is either a mirror image or a direct admission of the alleged fraud, fails.  *See* Mot. at 23 ("But none [of the disclosures] even mentions the things Plaintiffs claim made the challenged statements false or misleading . . . .").  This is not Plaintiffs' burden. *See, e.g., In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020) ("[T]o be corrective, a disclosure '***need not precisely mirror the earlier misrepresentation***.'  It is enough if the disclosure

- 16 -

reveals new facts that, taken as true, render some aspect of the defendant's prior statements false or misleading.") (citing *Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321-22 (5th Cir. 2014)).[12]  "Loss causation is a 'context-dependent inquiry,' and what may reveal fraud in one case may not reveal fraud in another." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1184 (9th Cir. 2024) (quoting *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (*per curiam*)).

Courts in this Circuit take "'a flexible approach' in evaluating whether some event or occurrence revealed fraud to the market." *Id.* (quoting *BofI*, 977 F.3d at 795). Therefore, "'[d]isclosure of the fraud is not a *sine qua non* of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss.'" *Mineworkers'*, 881 F.3d at 753; *see also Leventhal v. Chegg, Inc.*, 2024 WL 3447516, at *2 (N.D. Cal. July 17, 2024) ("[D]efendants fail to recognize that the Ninth Circuit has permitted alternative approaches to pleading loss causation besides alleging a corrective disclosure by the defendant."). For example, "'***[a] plaintiff may also prove loss causation by showing that the stock price fell upon the revelation of an earnings miss***, even if the market was unaware at the time that fraud had concealed the miss.'" *Karinski*, 2020 WL 281716, at *17 (alteration in original) (quoting *Mineworkers'*, 881 F.3d at 753); *see also In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327, 1338 (W.D. Wash. 2019) (announcement of a decline in demand and resulting drop in revenues sufficiently demonstrated loss causation); *Weston*, 669 F. Supp. 3d at 887 (citing *Mineworkers'* and holding that loss causation adequately pleaded based on stock drop "after the company revealed billings misses").

---

[12] *See also OPERS v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 385 (6th Cir. 2016) ("We are mindful of the dangerous incentive that is created when the success of any loss causation argument is made contingent upon a defendant's acknowledgement that it misled investors."); *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 688 (5th Cir. 2014) ("Defendants-Appellees have identified no authority requiring that a corrective disclosure must squarely and directly contradict the earlier misrepresentations.").

4873-0204-5934.v1

In sum, a plaintiff needs only to allege "a 'causal connection' between the fraud and the loss by tracing the loss back to 'the very facts about which the defendant lied.'" *Mineworkers'*, 881 F.3d at 753.  Moreover, there is nothing inconsistent – as Defendants would have this Court believe (*see* Mot. at 6, 23) – with the AC's allegations that as the undisclosed truth about Beyond's failure to profitably commercialize and scale new products began to leak into the market through a series of disclosures, that Defendants simultaneously made misleading statements (including public denials of negative news reports) that kept the Company's stock price from plummeting even further.  *See Genius Brands*, 97 F.4th at 1185 ("If a company's stock is tanking, and one of its senior executives makes a misstatement that pacifies the market and causes the stock price to decrease at a lower rate, that misstatement inflated the stock's price without increasing it."); *see also* ¶¶11, 94, 151.

Defendants claim that Beyond's public announcements of declines in net revenue and gross margins cannot constitute actionable disclosures for loss causation purposes because the allegations "do not show that these losses stemmed ***from a fraud*** rather than from ordinary course (albeit disappointing) financial disclosures."  Mot. at 23 (emphasis in original).  Defendants are wrong.  *See Kui Zhu v. Taronis Techs. Inc.*, 2020 WL 1703680, at *6 (D. Ariz. Apr. 8, 2020) ("Plaintiffs theory of a 'slow leak' revelation is nuanced, but this Circuit has recognized that there are an infinite number of ways to allege loss causation.") (citing *Mineworkers'*, 881 F.3d at 754).  The AC alleges that Defendants misled investors by failing to disclose that: (1) Beyond employed costly, disjointed, and inefficient production methods – for example, dumping millions of dollars into useless machinery that they ended up offloading shortly after the Class Period or flying products to and from Europe as part of the manufacturing and finishing process – that severely depleted the Company's profitability and revenue; and (2) Beyond's decision to transition away from its "high-dollar, high-margin" core line of retail products toward developing "lower-dollar, lower-margin" products for its QSR partners caused a massive deterioration in the

- 18 -

Company's gross margin. *See, e.g.*, ¶¶7-9, 12, 25-39, 54-55, 57-59. Thus, in October 2021, when Beyond slashed its net revenue outlook for Q3 2021 by upwards of 25% and announced rising expenses as the Company experienced operational challenges, this was "clearly related to the allegedly fraudulent conduct" that Defendants hid from investors. *Karinski*, 2020 WL 281716, at *17; *see also* ¶¶76-78, 141-143. The same is true when Beyond announced significant gross margin declines and/or dramatic increases in operating expenses in November 2021, February 2022, and May 2022 that surprised the market, resulting in notable stock price declines. *See* ¶¶79-80, 106-108, 115-117, 144-147, 156-159, 161-165; *see also Splunk*, 592 F. Supp. 3d at 950 ("Plaintiff's allegations raise the reasonable inference that a decline in the price of Splunk's stock was caused by an earnings miss for Q3 2020, which, in turn, was caused by the undisclosed actions regarding which Defendants allegedly misled investors . . . ."); *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 111 (D.C. Cir. 2015) (finding loss causation allegations sufficient where the disclosures "provided specific information about the state of the Company's PND business, disclosing, allegedly for the first time, that it was not flourishing as the Company had indicated"). Whether Beyond's investment in infrastructure "was no secret" or investors were purportedly told the Company was making "large investments," the market did not know (or even should have known) that either: (1) Beyond's QSR products were destroying the Company's gross margins; or (2) Defendants were losing millions on inefficient production processes (including buying essentially useless machinery and replacing seasoned co-manufacturing professionals with Beyond's own, inexperienced employees). *See* Mot. at 24.[13]

The November 17, 2021, December 9, 2021, and February 3, 2022 *Bloomberg* articles that were followed by stock price declines of nearly 4%, 8%, and more than

---

[13] Defendants appear to mistakenly cite to §II.D. of their Motion in support of this argument. *Id.* at 24. However, that particular section only refers to the Order granting the motion to dismiss. *See id.* at 9-10.

- 19 -

9%, respectively, are also sufficiently alleged partial corrective disclosures. *See* ¶¶149-155. All three articles partially revealed facts that relate directly to the AC's allegations that Defendants hid from investors that, during the Class Period, Beyond experienced serious difficulties with efficiently commercializing and manufacturing (in essence "scaling up production") of their QSR products – and that these problems were leading to the delays and/or cancellation of specific product launches which in turn negatively impacted the Company's profitability and overall financial health both for the present and future. *See, e.g.*, ¶¶88-105. That these partial disclosures were not an "explicit correction," as Defendants clearly imply they must be, is not dispositive of whether the AC's loss causation allegations are sufficiently pleaded. *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at *20 (C.D. Cal. Jan. 17, 2017); *see also* Mot. at 25. As the Ninth Circuit holds, "[i]t is enough if the disclosure reveals new facts that, taken as true, render some aspect of the defendant's prior statement false or misleading." *Genius Brands*, 97 F.4th at 1184; *see also York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*, 2024 WL 1327247, at *21 (N.D. Cal. Mar. 27, 2024) ("First, Defendants claim that [Plaintiff] fails to identify challenged statements that were corrected by subsequent disclosures of the fraud. . . . **This is not the law**.").

The July 27, 2022 J.P. Morgan report that McDonald's discontinued its U.S. test of the McPlant burger – followed by a more than 3% stock price decline (¶¶118-119, 166-167) – is also plausibly related to the AC's allegations about Beyond's undisclosed problems concerning its ability to meet the production, quality, and scaling demands of its massive "whale" QSR partners. *See Karinski*, 2020 WL 281716, at *18 ("While Defendants may argue that there are other reasons the stock price fell, such factual dispute is better suited for at a later stage in the proceedings."). Additionally, Beyond's announcement in October 2022 that it was laying off nearly 20% of its global workforce as part of a cost-reduction initiative to reduce expenses is plausibly connected to the fact that Beyond was experiencing revenue and gross

- 20 -

margin declines (including increased expenses) related to the undisclosed facts Defendants kept concealed from investors about Beyond's commercialization, production, scaling of its QSR products and how these all impacted the Company's profitability. *See* ¶¶120-125; *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 675 (D.S.C. 2016) ("resignation announcements can be corrective disclosures" for loss causation purposes) (citing *Amedisys*, 769 F.3d at 318).

### E.   Defendants Violated §20(a)

For the reasons stated above, because the AC adequately pleads that Defendants violated §10(b), the Court should also uphold Plaintiffs' §20(a) claims. *See* ¶¶190-192; *Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *14 (C.D. Cal. Apr. 12, 2016).

## IV.   CONCLUSION

Based on the foregoing, the Court should deny Defendants' Motion in its entirety.

DATED:  October 24, 2024

ROBBINS GELLER RUDMAN
 & DOWD LLP
SPENCER A. BURKHOLZ
LAURIE L. LARGENT
MATTHEW I. ALPERT
JOSEPH J. TULL

s/ MATTHEW I. ALPERT
MATTHEW I. ALPERT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
llargent@rgrdlaw.com
malpert@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Plaintiffs

- 21 -

4873-0204-5934.v1

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1. In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

DATED:  October 24, 2024

s/ MATTHEW I. ALPERT
MATTHEW I. ALPERT

- 22 -

4873-0204-5934.v1