LATHAM & WATKINS LLP
  Michele D. Johnson (Bar No. 198298)
   *michele.johnson@lw.com*
  Ryan A. Walsh (Bar No. 294506)
   *ryan.walsh@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290

  Heather A. Waller (*Pro Hac Vice*)
   *heather.waller@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Defendants*
*Beyond Meat, Inc. and Ethan Walden Brown*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SASKATCHEWAN HEALTHCARE EMPLOYEES' PENSION PLAN, and MARIO COLATO, <br><br> Plaintiffs, <br><br> v. <br><br> BEYOND MEAT, INC., et al., <br><br> Defendants. | Case No. 2:23-cv-03602-MWF-AGR <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> Date:  November 25, 2024 <br> Time:  10:00 a.m. <br> Place:  Courtroom 5A <br><br> Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

        A.      The Previously Dismissed Statements That Are Recycled
                In The Amended Complaint Remain Inactionable ............................3

        B.      Plaintiffs Do Not Allege That The New Challenged
                Statements Were False Or Misleading..................................................9

        C.      The Company's Robust Risk Disclosures Warned
                Investors Of The Risks That Later Materialized ..............................12

        D.      Plaintiffs Still Fail To Allege Scienter....................................................14

                1.      Plaintiffs Fail To Plead That Brown Acted With
                        An Intent To Deceive Or Deliberate Recklessness .................14

                2.      Plaintiffs Fail To Plead Beyond's Scienter .............................18

        E.      Plaintiffs Still Fail To Allege Loss Causation ...................................18

        F.      Plaintiffs' Section 20(a) Claim Must Be Dismissed..........................20

III.    CONCLUSION..................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bajjuri v. Raytheon Techs. Corp.*,
2023 WL 3650554 (D. Ariz. May 25, 2023)........................................................16

*City of Dearborn Heights Act 345 Police & Fire Ret. System v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ..............................................................................11

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017) ......................................................................18, 19

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................................................20

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024)..............................................................................5, 7

*Fialkov v. Microsoft Corp.*,
72 F. Supp. 3d 1220 (W.D. Wash. 2014) ..............................................................6

*Hadian v. Fate Therapeutics, Inc.*,
2024 WL 4246083 (S.D. Cal. Sep. 19, 2024) ...............................................18, 19

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ...............................................8, 10

*In re Apple Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. Nov. 4, 2020)................................................16, 17

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015)........................................................13

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. Mar. 31, 2023), *aff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024)........................................................................7

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)...............................................................................7

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)..................................................7, 11

ii

*In re Sentinelone, Inc. Sec. Litig.*,
2024 WL 3297150 (N.D. Cal. July 2, 2024) ........................................................ 17

*In re Talis Biomedical Corp. Sec. Litig.*,
2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ...................................................... 13

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................... 10

*Jiangchen v. Rentech, Inc.*,
2018 WL 11513254 (C.D. Cal. Nov. 1, 2018) ..................................................... 17

*Joyce v. Amazon.com, Inc.*,
2023 WL 8370101 (W.D. Wash. Dec. 4, 2023) ................................................... 16

*Kampe v. Volta, Inc.*,
2024 WL 4534732 (N.D. Cal. Oct. 21, 2024) ...................................................... 12

*Khoja v. Orexigen Therapeutics, Inc.*,
498 F. Supp. 3d 1296 (S.D. Cal. 2020) ............................................................... 18

*Loritz v. Exide Techs.*,
2014 WL 4058752 (C.D. Cal. Aug. 7, 2014) ....................................................... 17

*Metzler Inv. GMBH v. Corinthian Coll.*,
540 F.3d 1049 (9th Cir. 2008) ............................................................................. 20

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ............................................................................... 14

*Omnicare Inc. v. Laborers Dist. Council Indus. Pension Fund*,
575 U.S. 175 (2015) ..................................................................................... 10, 11

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ............................................................................... 18

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021) ............................................................................. 15

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
2023 WL 6314939 (S.D.N.Y. Sept. 28, 2023) ..................................................... 14

*Studen v. Funko, Inc.*,
2024 WL 2209686 (W.D. Wash. May 16, 2024) ............................................ 15, 16

iii

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................ 14

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ................................................................................ 14

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .................................................................................. 9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .................................................................................. 7

**STATUTES**

15 U.S.C. § 78U-5(c)(1) ...................................................................................... 11

15 U.S.C. § 78u-5(i)(1)(B) ................................................................................... 8

iv

## I.   INTRODUCTION

This Court dismissed Plaintiffs' prior complaint because it failed to meet the required pleading standards.  Rather than explain how the Amended Complaint ("AC") overcomes the numerous defects the Court identified in its dismissal order, Plaintiffs' Opposition underscores that the AC suffers from the same fatal flaws. Plaintiffs once again do not identify any facts to demonstrate that Beyond's[1] statements were false or misleading *when they were made*, much less that the statements were made with an intent to deceive or deliberate recklessness. According to Plaintiffs, Beyond knew it could never scale to meet its QSR partners' expectations and simultaneously hid from the market that investing in these new products was not profitable.  Plaintiffs continue to claim Beyond knew from the start that its growth strategy was doomed to fail, by again pointing to challenges the Company experienced in securing permanent Beyond menu items at these quick-service restaurants, as well as to the Company's post-Class Period statements about focusing on cash-positive operations.  Plaintiffs' theory of wrongdoing is fraud-by-hindsight.  The Court has already rejected Plaintiffs' untenable allegations, and should do so again, this time with prejudice.

*Falsity.*   The Court previously dismissed all of the challenged statements because Plaintiffs failed to show how they were false *when made*.  Many of the statements were also inactionable puffery, opinion, or forward-looking statements. The AC's slightly amended allegations fare no better.  *First*, Plaintiffs still have not provided the requisite link between the content of the statements—many of which were made at the same time as the supposed partial corrective disclosures that Plaintiffs allege—and any facts allegedly undermining each statement's truth. Order Granting Defs.' Mot. to Dismiss Consol. Class Action Compl. (Dkt. 56) ("Order")

[1] Unless otherwise stated, all capitalized terms have the same meaning as in Memorandum of Law in Support of Defendants' Motion to Dismiss First Amended Consolidated Class Action Complaint (Dkt. 60-1) ("Mot.").

at 18. ***Second***, Plaintiffs cherry-pick snippets of Defendants' statements, selectively omitting the surrounding context that reveals that many were not even about QSRs or the Company's investment in manufacturing capabilities for QSR products. ***Third***, Plaintiffs' fraud-by-omission theory is contradicted by the Company's detailed risk disclosures both before and throughout the Class Period, including that developing innovative products is expensive, and that Beyond's failure to scale its manufacturing or commercialization capacity could lead to reduced margins and decreased profitability.

***Scienter.*** The Opposition further confirms Plaintiffs' failure to plead facts showing that Defendants either knew their statements were false or acted with deliberate recklessness as to their truth. Plaintiffs do not answer the critical question raised in Defendants' Motion—namely, why would the Company and its CEO invest millions to develop production processes they knew they could never cost-effectively scale and would not satisfy QSR partners? Mot. at 19. The Opposition does not identify any facts that show what Brown specifically knew and when, nor does it argue that Brown sold any stock during the Class Period (he did not). Without those things, Plaintiffs fall back on Brown's public statements as evidence of scienter, which do not come close to meeting the PSLRA's demanding scienter requirements.

***Loss Causation.*** Plaintiffs have not satisfied the bare minimum of showing how any of the allegedly corrective disclosures revealed that any aspect of Defendants' prior statements was false or misleading. Instead, Plaintiffs draw unsupported conclusions of fraud from generalized references to increased costs, lower margins, and operational challenges without tying any of these purported revelations to specific prior statements. And even more implausible, many of Plaintiffs' alleged partial disclosures contained the very statements Plaintiffs challenge.

2

Given Plaintiffs' repeated failures to cure these deficiencies, the Court should dismiss the AC with prejudice.

## II.   ARGUMENT

### A.   The Previously Dismissed Statements That Are Recycled In The Amended Complaint Remain Inactionable

As Defendants pointed out in their Motion, Mot. at 11–16, the AC does not cure the fundamental deficiency in Plaintiffs' original complaint: there are no contemporaneous facts demonstrating "how the statements were false when made." Order at 18, 19. The Opposition only highlights this shortcoming. Rather than point to any new facts that show how each of the statements was false **when made**, Plaintiffs largely regurgitate vague allegations of "poor staffing, production inefficiencies, and inventory mismanagement" that this Court already deemed insufficient to state a claim. *See* Opp. at 4–8; Order at 18–19.

***Manufacturing and Production (App. A,[2] Statements 1–7, 10)*.**[3] In the AC, Plaintiffs still do not tie any of the same alleged generalized manufacturing and product "formulation" problems that they alleged in the Complaint to any particular time period or any specific statement challenged in the AC. For instance, Plaintiffs allege that the same unspecified production issues at the DeVault plant beginning in September 2020 rendered false and misleading statements Brown made starting five

---

[2] For ease of reference, Defendants submitted Appendix A to number the challenged statements and corrective disclosures. And Defendants submitted Appendix B to organize the Company's lengthy risk disclosures that Defendants seek to judicially notice. Neither raises any new substantive arguments. *Cf.* Opp. at 3 n.3.

[3] Plaintiffs confusingly claim that the Court did not previously dismiss Statements 2 and 3, or at least did not dismiss the portions of those statements that Plaintiffs challenge now. *See* Opp. at 2, 5 n.5. To the contrary, the Court explicitly held Statements 2 and 3 (prior Statements 17 and 19)—including the same bolded and italicized language that appears in the AC—were not adequately pled. *See* Order at 19 (dismissing Statement 2 (*compare* Compl. ¶ 68, *with* AC ¶ 65)) and Statement 3 (*compare* Compl. ¶ 70, *with* AC ¶ 66). In fact, the Court dismissed *all* of the statements challenged in the original complaint because "Plaintiffs fail to provide contemporaneous factual allegations to demonstrate how the statements were false when made." Order at 18–19. As to certain of the statements, the Court *also* deemed them nonactionable because they are puffery, statements of opinions, or protected under the PLSRA safe harbor for forward-looking statements. *Id.* at 21–29.

3

months later. *Compare, e.g.*, Compl. (Dkt. 42) ¶ 59(b), *with* AC ¶¶ 37–39; Opp. at 5. To start, Plaintiffs misleadingly omit from the AC that the reference to QSRs in Statement 5 relates to Beyond's Columbia, Missouri facilities, not the Pennsylvania plant. *Compare* AC ¶¶ 70, 72(a) (suggesting that the reference to QSRs relates to the Pennsylvania plant), *with* Ex. 2 at 7 (Beyond's actual disclosure, stating that "in support of [its] strategic QSR customers in [its] retail business, [it was] adding new lines in [its] Columbia, Missouri facilities"). And none of Plaintiffs' allegations contradicts the rest of Brown's May 6, 2021 statements—both of which Plaintiffs tacitly concede were not specific to QSRs—that the Company was making "continued improvements in throughput across [its] manufacturing network," AC ¶ 69 (Statement 4), or was "continuing to optimize commercial production at the Pennsylvania plant," *id.* ¶ 70 (Statement 5); Ex. 2 at 7. Nor do the allegations undercut Brown's February 25, 2021 statement that the Company was "starting to see [it] [bring costs out]" at the DeVault plant, AC ¶ 66 (Statement 3), his May 6, 2021 statement about "continu[ing] to move at a pace that matches the opportunity," *id.* ¶ 71 (Statement 6), or his August 5, 2021 statement about implementing a "cost-down program" on the Company's ***retail*** product lines, *id.* ¶ 74 (Statement 7).

The Court previously rejected similar statements as "puffery and opinion" or protected forward-looking statements. *Compare* Order at 23 ("continued advancement" and "continuing to see"), 19 ("substantial investment plan"), 26 ("going to bring a lot of cost out"), *with* AC ¶ 69 ("continued improvements"), *id.* ¶ 70 ("continuing to optimize"), *id.* ¶ 66 ("starting to see"), *id.* ¶ 71 ("move at a pace that matches the opportunity"), *id.* ¶ 74 ("steady improvement"). Plaintiffs point to vague "formulation problems," Opp. at 6 (citing AC ¶¶ 41–45, 59), but these assertions still do not show how Brown's May, February, or August statements about Beyond's manufacturing and operations decisions were false or misleading when made.

4

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

The same is true for Beyond's generalized statements about planning and preparing for its QSR partnerships. AC ¶ 64 (Statement 1, "scaling and preparing for"), ¶ 65 (Statement 2, "[W]e're not doing those in a hope and a prayer"), ¶ 86 (Statement 10, "investments … are the result of planning against key partnerships"); *see* Order at 19 ("substantial investment plan"), 25 ("deeply innovating with"), 27 ("making really good progress"). Plaintiffs claim without support that Beyond "lock[ed] in these deals" before having *any* commercialization plan in place. *See* Opp. at 5. To be sure, Plaintiffs continue to characterize the Company's investments in machinery, use of a multi-location production process, and use of co-manufacturers as "too expensive." *Id.* at 8; AC ¶¶ 25–29; *see also* Compl. ¶ 49. But Plaintiffs concede the AC does not allege Beyond's disclosures about actual costs were false or misleading. *See* Mot. at 15; Opp. at 10. And in any event, Plaintiffs' allegations do not show that Beyond "had *no* plan in place for commercializing and scaling," AC § IV.C (cleaned up) (emphasis added), or lacked the ability to scale, *see* Opp. at 13–14. At best, these allegations reflect Plaintiffs' "[d]issatisfaction with a company's strategy [or] management," which may "make for interesting reading but [is] not an actionable securities fraud claim." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024).

Rather than point to any new particularized allegations that show how and when the manufacturing statements were misleading, Plaintiffs deflect and confuse. As one example, Plaintiffs say the AC "describes formulation problems Beyond experienced in trying to meet its partners' demands" and cite a November 21, 2022 *WSJ* article and Defendants' May 11, 2022 "admission" about "expensive and inefficient" processes. Opp. at 6 (citing AC ¶¶ 59, 115). But these allegations are about the production process for retail chicken tenders and Beyond Jerky—and have nothing to do with any of the challenged statements.

As another example, Plaintiffs' argument that Beyond's QSR-designed products were "never made permanent menu items" at restaurants (Opp. at 6, 8

5

(cleaned up)) is a red herring:  the Company never promised that these items would be made permanent or remotely suggested to investors that this was a likely outcome. The opposite was true: Beyond told investors "we are obviously ***working toward*** more permanent menu placement[s]"—a forward-looking statement—and warned investors that the QSR partners "may choose to no longer offer [its] products or may ultimately scale back subsequent expansions."  Ex. 8 at 24; AC ¶ 112 (Statement 13).

And while Plaintiffs claim the AC "never alleges" that the Company "guaranteed the success" of its investments (Opp. at 7), their shifting falsity theory now focusing on product costs and margins lacks logic:  Plaintiffs do not allege Beyond's reported financial results were false or misleading.  However Plaintiffs characterize their own allegations, they consistently point to the Company's "failure to secure" permanent menu items at McDonald's, KFC, and Pizza Hut as proof that Defendants were "***not*** advancing" their goals.  *See* Opp. at 8.[4]  That is quintessential fraud by hindsight.  *See Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1230–31 (W.D. Wash. 2014) (rejecting allegations that company was "misleadingly inflating the product's success" based on announcement that company had to write down inventory).

Without any particularized factual allegations developed from, for example, confidential witnesses who spoke directly with Plaintiffs, Plaintiffs hinge most of their arguments on double-hearsay statements in news articles they previously cited in the original Complaint.  *See* Opp. at 2.  These articles are not substitutes for well-pled facts showing how Defendants' Class-Period statements were false when made.

---

[4] Defendants do not make a "disputed factual claim" about whether Beyond ultimately did scale production.  Opp. at 7 n.6.  What Defendants argue, and what Plaintiffs fail to address, is that Plaintiffs' claim that Beyond was "unable to meet its QSR partners' requirements" is contradicted by their own allegations: the AC itself describes many successful tests or launches.  *See, e.g.*, AC ¶¶ 31, 84, 63.  The Exhibits incorporated by reference to the AC (*see* Opp. at 3 n.3) confirm the same.  *See, e.g.*, Ex. B at 4; Ex. 11 at 11–12 (discussing successful long-term launch of McPlant Burger in U.K. and launch of Double McPlant across U.K. and Ireland).

6

*E.g.*, *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *21–22 (N.D. Cal. Mar. 31, 2023), *aff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 (9th Cir. 2014) (rejecting "secondhand" allegations). Reported claims from a handful of purported former Beyond employees "simply amount[] to criticisms of [Brown's] management practices." *Espy*, 99 F.4th at 533; *e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009) (rejecting allegations from unidentified witnesses as unreliable and vague hearsay). The articles contain no details about the job titles, responsibilities, dates of employment, or any other similar indicia lending credibility to the accounts of "five former employees" who claimed commercialization was an "ongoing challenge" at unknown times or the "multiple former employees" who complained about Brown's leadership style. Ex. B at 5, 7; *see also* Ex. C at 1, 3, 5 (generally attributing statements to "some current and former employees"). And even if credited, the anonymous anecdotes, including the unremarkable fact that "Brown discusses products with customers before scaling has been figured out," Ex. B at 5, are too vague to show any challenged statement was false or misleading. *See, e.g.*, *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *11–12 (N.D. Cal. July 21, 2020) (confidential witnesses' "conclusory assertions" that product was "difficult to implement" insufficient to contradict positive statements about products).

**QSR Partnerships (App. A, Statements 13, 14)**. Plaintiffs again assert Brown's February 24, 2022 statements that the Company was "obviously working toward more permanent menu placement[s]" and "if you look at our track record, we've done well with continuing to maintain the relationships with our QSRs" were misleading. *Compare* Compl. ¶¶ 126–127, *with* AC ¶¶ 112–113 (Statements 13–14). The Court already rejected Plaintiffs' argument that these statements were false or misleading. Order at 18 (citing Compl. ¶¶ 126–127). While Plaintiffs now claim these statements were false and misleading because "Beyond could not cost-efficiently meet [its] QSR partners' product specifications," Opp. at 9, neither the

7

AC nor the Opposition shows why a different outcome is merited. *See* Order at 18. *First*, the PSLRA safe harbor shields Brown's statement that the Company is "working toward" permanent placements. 15 U.S.C. § 78u-5(i)(1)(B); *see* Order at 26. *Second*, Brown's statement that the Company has "done well" with maintaining its QSR relationships is classic puffery and a statement of Brown's opinion. *See* Order at 23 (finding similar statements assuring investors that QSR tests and relationships were "going well" as puffery and opinion). *Third*, Plaintiffs do not identify particularized facts showing, if true, that the Company was actually not "doing well with continuing to maintain" its QSR relationships as of February 24, 2022. AC ¶ 113. Nor does the allegation that customers were "dissatisfied with the customized products," *id.* ¶ 114; Opp. at 9, contradict Brown's statement that Beyond was "working toward more permanent menu placement," AC ¶ 112 (Statement 13), or his description of Beyond's "track record" of "go[ing] from tests to . . . full launches," *id.* ¶ 113 (Statement 14).

***Product Quality (App. A, Statements 9, 11)***. Plaintiffs' challenges to Defendants' product-quality statements failed once for failure to allege contemporaneous falsity. *See* Compl. ¶ 96 (new Statement 9); *id.* ¶ 110 (new Statement 11); Order at 18–20. This time, Plaintiffs claim the statements were misleading because "internal problems" were eroding margins. AC ¶¶ 96, 111. In so arguing, Plaintiffs cherry-pick and mischaracterize Defendants' product-quality statements—but the "context matters." *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *6 (S.D. Cal. Sept. 20, 2021). Plaintiffs portray Defendants' statement that Beyond's decision "not to use an additional co-packer" was "not a question" of formulation or production problems, AC ¶ 95 (Statement 11), as an "outright denial" of "escalating costs, product delays, up to 50% waste, and dissatisfied QSR partners." Opp. at 8–9. But the article makes clear that Beyond made this statement specifically about *one* product after choosing a new formula to ensure consumers were not eating undercooked food; the statement said nothing about the cost or

8

efficiency of the QSR-related manufacturing processes. *See* Ex. B. And in any case, Plaintiffs identify zero facts that Beyond's decision not to use *one* copacker led any of the QSR partners to be "dissatisfied," or caused 50% waste in product, product delays, or escalating costs. *See* Opp. at 9.

Likewise, Plaintiffs never explain how Beyond had not "overc[o]me numerous technical challenges" to ensure that "Beyond Pepperoni is nearly indistinguishable from Pizza Hut's iconic original pepperoni." AC ¶ 84 (Statement 9). Instead, Plaintiffs distort this statement out of context, arguing that it was about "ensur[ing] that [Beyond] was meeting the demands of its QSR customer," Opp. at 4, when it was on its face about the technical challenges of creating a plant-based "Pepperoni" product. *See, e.g.*, *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022) (no falsity where "context makes clear" statement did not address what plaintiff said). Even if creating the product came with a "high price," AC ¶ 58, this did not mean that Beyond had *not* overcome "technical challenges" with creating the product. And as explained below, Beyond warned investors that developing innovative products like this would be expensive.

**B.     Plaintiffs Do Not Allege That The New Challenged Statements Were False Or Misleading**

The two new challenged statements—"we are steadily executing against our vision of being tomorrow's global protein company" (AC ¶ 82, Statement 8), and Defendants "do not expect these higher costs to persist indefinitely" (*id.* ¶ 110, Statement 12)—fail on multiple levels. *First*, Plaintiffs say that, by making these statements, the Company "misleadingly reassured" investors that its manufacturing-and-production investments paid off. Opp. at 7. That argument makes no sense, considering that Plaintiffs admit Beyond informed investors of the very facts Plaintiffs claim were concealed—that gross margins had declined because of "expenses associated with new product commercializ[ation]," among other things. *See* Mot. at 16 (citing AC ¶ 79); *see also* AC ¶ 156. Nor did Beyond have a duty to

9

disclose alleged "production inefficiencies" every time it spoke about its manufacturing investments. *See, e.g.*, *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *5 ("[T]he duty to disclose additional information only arises when it is necessary to correct a misleading statement.").

***Second***, Brown's statement that Beyond was "steadily executing against [its] vision of being tomorrow's global protein company," AC ¶ 82 (Statement 8), is not verifiable by any objective standard and is yet another classic example of corporate puffery. *See, e.g.*, *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007) (claims of "industry leading" growth," "measurable progress," "continuing improvements" nonactionable); *see also* Order at 23 ("it was a terrific launch" and "the tests are going well" inactionable puffery).

***Third***, both statements are nonactionable opinions. As to Statement 12— Brown's opinion that "[w]e do not expect these higher costs to persist indefinitely"—Plaintiffs argue Brown omitted that "Beyond relied on fragmented and inefficient production processes" and their "then-current approach considerably accelerated costs at every stage." Opp. at 12 (citing AC ¶ 111). But Brown's opinion was about what would happen to ***future*** costs, not "***then-current***" costs. *See* Ex. 5 at 6–7. Accordingly, accepting Plaintiffs' factual allegations as true, they do not undermine the basis of Brown's opinion. Rather, the statement confirms that Brown and Beyond were transparently disclosing the high cost of developing innovative new products.

And as to Statement 8—Brown's belief that Beyond "was 'steadily executing' its vision"—Plaintiffs argue Beyond "lacked the production processes" to produce "new and customized products for Beyond's QSR customers." Opp. at 5, 10–11 (citing AC ¶ 83). Again, Plaintiffs never allege Brown knew Beyond could ***never*** produce new products for its QSR customers or that the Company was not "steadily executing" on its vision for the future. *See Omnicare Inc. v. Laborers Dist. Council*

*Indus. Pension Fund*, 575 U.S. 175, 184 (2015).  New products and production processes are not developed overnight, after all.

Nor do Plaintiffs allege Brown omitted "***facts*** going to the basis" for his opinion; Plaintiffs merely conclude Beyond lacked the production process in place at the time.  *City of Dearborn Heights Act 345 Police & Fire Ret. System v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (emphasis added); *Omnicare*, 575 U.S. at 184 (opinions are "not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way").  In any event, the alleged omission does not make Brown's opinion misleading when the statement is read "fairly and in context."  *Omnicare*, 575 U.S. at 194; Ex. 4 at 2 ("***Whether*** scaling products and infrastructure for our strategic [QSR] partners, bringing new product to retail markets, ***or*** investing in innovation, commercialization, and production capabilities here in the U.S., EU, and China, ***we believe we are steadily executing*** . . . ." (emphasis added)).

***Finally***, neither Statement 8 nor Statement 12 is actionable because both are protected by the PSLRA safe harbor.  *See* Mot. at 17; 15 U.S.C. § 78U-5(c)(1).  Plaintiffs do not counter Defendants' argument that Statement 12 is forward-looking, nor could they.  *See* Opp. at 12; AC ¶ 110 ("[w]e do not expect…"); Order at 28 ("we expect" statements held as forward-looking).  And their argument that Brown's statement that "we are steadily executing" (Statement 8) represents "present fact" omits the part of the statement that speaks to management's "plans and objectives . . . for future operations" and "[its] vision of being tomorrow's global protein company."  AC ¶ 82; *see In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *15 (N.D. Cal. July 21, 2020) ("We are still in the early stages of executing against our long-term vision" was forward-looking).  Because Beyond cautioned that it might not ever reduce costs or achieve complete fulfillment of its "vision" (Mot. at 16–17), the safe harbor protects Statements 8 and 12.

11

### C.    The Company's Robust Risk Disclosures Warned Investors Of The Risks That Later Materialized

While, for the reasons discussed above, the Opposition does not cure Plaintiffs' failure to plead that *each* specific challenged statement was false and misleading, Plaintiffs also almost entirely ignore that these statements were made against the backdrop of Beyond's substantial and detailed risk disclosures. Plaintiffs relegate to a single paragraph their entire response to Defendants' argument about the Company's risk disclosures, claiming (without citing any examples) that none of the Company's cautionary language was tailored to the Company's ability to cost-effectively manufacture products. Opp. at 10. Beyond's disclosures undermine Plaintiffs' undeveloped argument.

In fact, the Company disclosed to investors *long before* the start of the Class Period the inherent risks of expansion and innovative development, including that the Company might not be able to scale its manufacturing capacity. Beyond's warnings undercut Plaintiffs' untenable theory that Beyond misled investors about being able to "handle" the product orders for its QSR partners, all while *knowing* the Company "was not prepared to fulfill them" *and* that these new products would significantly erode the Company's margins. Opp. at 4–5; *e.g.*, *Kampe v. Volta, Inc.*, 2024 WL 4534732, at *9 (N.D. Cal. Oct. 21, 2024) (company's failure to disclose failed financing efforts not misleading due to repeated warnings about needing significant capital to finance its growth strategy and that its failure to do so "may significantly curtail its operations, modify strategic plans, and/or dispose of certain operations or assets").

Specifically in 2020, Beyond told investors that a "key element of [its] growth strategy depends on [its] ability to develop and market new products." Ex. 6 at 25. This strategy would be no surprise to investors, as Beyond was pioneering a revolutionary new product in a nascent segment of an otherwise established industry. *See generally* AC. Beyond further warned that it "incur[s] significant expenses in

12

developing our innovative products" (Ex. 8 at 22) and that the "development and introduction of new products require[d] *substantial* research [and] development" costs that the Company may never recoup. *Id.* at 31 (emphasis added). The Company cautioned that it could fail to "effectively expand [its] manufacturing and production capacity." *E.g.*, *id.* at 22; Ex. 6 at 17; Ex. 9 at 23. Beyond *never once* told investors that its new QSR-specific products would have better profit margins than its core products, *see* Opp. at 4, or that its substantial investments in manufacturing and production capacity would solve commercialization or profitability issues, *id.* at 2. Instead, Beyond warned investors it could "overbuild [its] capacity," which would lead to "*reduced margins*," Ex. 8 at 22 (emphasis added), and the "[f]ailure to develop and market new products" could "lead to a *decrease in [its] growth, sales and profitability*." Ex. 6 at 25 (emphasis added). And far from misleading investors about "securing QSR permanent menu placements and full launches," Opp. at 9, Beyond warned investors its foodservice customers "may choose to no longer offer [its] products or *may ultimately scale back* subsequent expansions." Ex. 8 at 24 (emphasis added).

In sum, the Opposition confirms that Plaintiffs' case is entirely fraud by hindsight. *See* Opp. at 8 (pointing to post-class "admissions" as evidence of fraud). Plaintiffs complain that the Company's bespoke QSR products were "too expensive" and doomed to fail, *see id.* at 5, 8, but Plaintiffs cannot use "the benefit of 20-20 hindsight to turn management's business judgment into securities fraud." *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *12 (N.D. Cal. Dec. 9, 2022); *see also In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18 (N.D. Cal. Feb. 12, 2015) ("[I]t is … well-settled in the Ninth Circuit that fraud by hindsight is not actionable." (internal quotation omitted)).

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

### D. Plaintiffs Still Fail To Allege Scienter

#### 1. Plaintiffs Fail To Plead That Brown Acted With An Intent To Deceive Or Deliberate Recklessness

The Opposition confirms that Plaintiffs fail to allege a strong inference of scienter against either Brown or Beyond. *See* Mot. at 18–22. To start, Plaintiffs' theory of scienter runs headlong into "an immediate first-level problem": why would Defendants publicly stake Beyond's existence on a business model they thought was "doomed" to fail? *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415–16 (9th Cir. 2020). Neither the Opposition nor the AC answers this basic question. *See* Opp. at 12–16 (addressing only Defendants' arguments about Brown's lack of motive and alleged hands-on involvement at the Company). At most, Plaintiffs allege that Brown, as Beyond's founder, believed in the Company's future and wanted the Company to grow. *Id.* at 13 (citing AC ¶ 135). But "routine corporate objectives" do not support scienter. *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) (allegations of motive to boost company's profitability are not sufficiently "specific" or "particularized").

Plaintiffs' cited cases highlight their failure to allege that Brown had a plausible motive to defraud. The plaintiffs in *Thomas* and *Sjunde* both supported scienter by alleging that the defendants were motivated to inflate company stock because their bonuses were tied to stock performance. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 2023 WL 6314939, at *11 (S.D.N.Y. Sept. 28, 2023) ("[A] rational jury could infer that [defendants] benefitted in a concrete and personal way from the purported fraud because an incentive program tied executive bonuses to cash performance."); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (plaintiffs alleged potential motive due to "securing personal bonuses tied to more favorable results"). No such allegations are made here. Without a plausible theory of a defendant's motive to commit fraud, Plaintiffs "face

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No. 2:23-cv-03602-MWF-AGR
DEFS.' REPLY ISO MOT. TO DISMISS AM.
CONSOLIDATED CLASS ACTION COMPLAINT

a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1103 (9th Cir. 2021).

Plaintiffs make much of the Court's prior Order on the core-operations doctrine, yet overlook the Court's actual conclusion: "It is not clear at what point Brown allegedly had knowledge or acted with deliberate recklessness regarding testing and scalability." Opp. at 12–13; Order at 31. Even assuming the Court determined that Plaintiffs adequately alleged that the Company's manufacturing and ability to scale for its QSR partners was a "core operation," Plaintiffs pivoted their falsity theory in the AC to focus on the Company's profit margins (Opp. at 7) without pivoting their scienter allegations to match: Plaintiffs do not allege that managing gross margins of individual product lines was one of the Company's core operations. Their continued reliance on "core operations" therefore does not make sense. Regardless of the theory, however, the Opposition does not point to any facts that what Brown knew contradicted (or seriously undermined) his public statements, let alone plead specifically when Brown knew such facts—because there are none. *See, e.g.*, *Prodanova*, 993 F.3d at 1108 (affirming dismissal where complaint "pleads no facts alleging that [defendant] knew" adverse facts when he spoke publicly); Order at 18.

In lieu of specific facts that contradict or undermine Brown's public statements, Plaintiffs argue it would be "borderline ludicrous to suggest" that Brown was "unaware of major issues" relating to scaling and commercializing. Opp. at 13–14. Setting aside the faulty premise of Plaintiffs' argument, the Opposition does not identify any "particularized allegations regarding [Brown's] actual exposure to information" undermining his public statements; "this is not the 'exceedingly rare' and 'unusual' case where the court can impute knowledge" solely through Brown's role. *Studen v. Funko, Inc.*, 2024 WL 2209686, at *18 (W.D. Wash. May 16, 2024) (accumulation of excess inventory "would not have been patently obvious to senior executives" based on "granular details . . . such as the state of storage racks, . . .

15

shelves . . . and pallets of partial orders"); Order at 30 ("[T]he Complaint lacks an admission from Brown that he was involved in every detail of the company."); *Bajjuri v. Raytheon Techs. Corp.*, 2023 WL 3650554, at *13 (D. Ariz. May 25, 2023) ("'[A]bsurdity' is a very high bar not reached in cases with more extreme facts[.]"). Even Plaintiffs' cited authority confirms that "some evidence that the corporate officers received information about the matter is required." *In re Apple Sec. Litig.*, 2020 WL 2857397, at *24 (N.D. Cal. Nov. 4, 2020) (Opp. at 14). Plaintiffs offer *no* evidence.

Instead, Plaintiffs argue that Brown's public statements themselves support scienter. Opp. at 13. Yet the "mere fact that [Brown] spoke about a topic does not provide support for a strong inference of scienter." *Joyce v. Amazon.com, Inc.*, 2023 WL 8370101, at *14 (W.D. Wash. Dec. 4, 2023). Instead, Plaintiffs must "specifically allege where, when, and how" Brown "became aware of information contradicting" his public statements. *Id.*; Order at 30 (Plaintiffs failed "to explain how such statements demonstrate that he was specifically informed of the particularities surrounding [Beyond's] 'operational and testing side'"). Plaintiffs offer no such specifics and instead mischaracterize Brown's statement that he was "working on" "innovation" as an admission of his "personal involvement" in the minutiae of the Company's manufacturing and product development processes. Opp. at 13 (citing AC ¶¶ 135, 137). Brown's "generalized statement" about innovating (he is the founder of a company built on innovation, after all) does not rise to a "specific admission" that Brown was "involved in every detail" of the Company's commercialization including its cost. *Funko*, 2024 WL 2209686, at *17–18 (statement that "we are constantly looking at the quality of our inventory" not "specific admission" of inventory monitoring). The same is true for Brown's statements about the Company's QSR partners. *See, e.g.*, *id.* at *18 (statement that inventory was "generally is very healthy" did not rise to "specific admission" that the speaker closely monitored inventory).

16

Nor does Plaintiffs' reliance on Brown's tours of Beyond's facilities and his "hands-on" management style support a strong inference of scienter. Opp. at 14, 16; Mot. at 22. Indeed, the AC does not allege any particular visit or discussion that "would have alerted" Brown to specific production issues, Beyond's alleged inability to scale, or the resulting cost impact. *See Jiangchen v. Rentech, Inc.*, 2018 WL 11513254, at *8 (C.D. Cal. Nov. 1, 2018) (no scienter despite plaintiffs' allegations that defendants were "onsite"). Plaintiffs' undue focus on a single incident on an unspecified date of wood in a shipment does not save their scienter argument, as that incident had no bearing on the Company's ability to scale customized products. Opp. at 14; AC ¶ 134. That is why Plaintiffs' cited cases are distinguishable. *See In re Apple*, 2020 WL 2857397, at *26 (finding it implausible that CEO would not have known demand was falling considering company halted production days later); *Loritz v. Exide Techs.*, 2014 WL 4058752, at *12 (C.D. Cal. Aug. 7, 2014) (inferring defendant's scienter about environmental issues at plant where defendant acknowledged plant was "tracking well below the new stricter standard").

And to the extent Plaintiffs seek once again to swap two articles citing anonymous sources for well-pled scienter allegations (Opp. at 16 (citing AC ¶¶ 47–50)), that attempt fails for the same reason it did last time: "Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel." Order at 33. As before, neither the articles nor Plaintiffs provide any facts from which the Court can infer the sources' reliability. Accordingly, the Court need not consider them. *See, e.g.*, *In re Sentinelone, Inc. Sec. Litig.*, 2024 WL 3297150, at *7 (N.D. Cal. July 2, 2024) (declining to consider confidential witness allegations where complaint alleged no facts to suggest witnesses had interactions with the individuals or were in a position to know defendant's state of mind and citing cases).

17

### 2. Plaintiffs Fail To Plead Beyond's Scienter

Plaintiffs concede their case for Beyond's scienter hinges on Brown. Opp. at 12–16. And because Plaintiffs fail to allege a strong inference of Brown's scienter (*supra* Section II.D.1), Plaintiffs fail to allege Beyond's scienter. Order at 32; Mot. at 22.

### E. Plaintiffs Still Fail To Allege Loss Causation

Plaintiffs argue the corrective disclosures need not be a "mirror image" of the earlier misrepresentation (Opp. at 16), but Plaintiffs still must connect their alleged "corrective disclosures" to show how Defendants' prior statements were false or misleading. *See Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296, 1316 (S.D. Cal. 2020). Plaintiffs must "trac[e] the loss back to the very facts about which the defendant lied." *Hadian v. Fate Therapeutics, Inc.*, 2024 WL 4246083, at *40 (S.D. Cal. Sep. 19, 2024). And they must do so with particularity under Rule 9(b). *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014); *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017). Plaintiffs' Opposition confirms they have not satisfied this burden.

***Disappointing Financial Results.*** Plaintiffs' Opposition fails to explain how the Company's announcement of worse-than-expected financial results "corrected" ***any*** aspect of the challenged statements. For instance, the Company's November 10, 2021 announcement reported lower-than-expected margins due to inventory write-offs, higher-than-expected transportation and warehousing costs, and increased investment in commercializing new products. AC ¶ 144. None of the challenged statements before this "corrective" disclosure touched upon any of these topics. *See* App. A (Statements 1–10). The same thing same is true for the Company's May 11, 2022 announcement about Beyond Jerky. AC ¶ 161. And the February 24, 2022 announcement that the Company experienced higher-than-expected costs for its chicken product launches, Ex. 5 at 6, does not render false or misleading the Company's prior statement about investing with the goal to achieve

18

*price parity* with animal protein—a general corporate goal that had nothing to do with the Company's progress toward commercializing its QSR products. AC ¶ 157; Ex. 2 at 7. Finally, Plaintiffs simply conclude without any support in fact or logic that the Company's unspecified "expenses" and "operational challenges" disclosed on October 22, 2021 must have been related to its QSR partnerships. AC ¶ 76. Mere supposition of a connection between a disclosure and a prior statement is insufficient to plead loss causation. *See Hadian*, 2024 WL 4246083, at *40 (noting it "is not sufficient to speculate" that the purported corrective disclosure was the "foreseeable consequence" of the alleged fraud); *Curry*, 875 F.3d at 1225.

     ***News Articles and Reports.*** Plaintiffs' reliance on news and analyst reports fails for similar reasons. The December 10, 2021 articles about Taco Bell's cancellation of one test could not correct any of Defendants' prior statements because none was specific to Taco Bell or the test. AC ¶¶ 98, 101; App. A (Statements 1–11). The same is true for the February 3, 2022 *Bloomberg* report about Del Taco. AC ¶ 154; App. A (Statements 1–11 (no statement about Del Taco)). And Plaintiffs fail to explain in their Opposition how the November 17, 2021 *Bloomberg* article reporting on the operational challenges associated with Beyond's chicken product touches on any aspect of the prior challenged statements. AC ¶¶ 154–155. Indeed, the only statements Plaintiffs challenge related to the Company's manufacturing or production processes did not even mention QSRs, let alone the chicken product. *See* Ex. 2 (Statement 4 describing investments made to achieve price parity with meat proteins); Ex. 1 (Statement 3 describing efforts to improve "production model" in general).

     In any event, Beyond's repeated cautionary warnings about the costs Beyond was incurring associated with its commercialization processes preclude Plaintiffs from claiming any news reports "corrected" any alleged misstatement. For example, although Plaintiffs argue the July 27, 2022 J.P. Morgan report and the February 3, 2022 *Bloomberg* report "disclosed" that difficulties in scaling impacted profitability

19

(Opp. at 20), Beyond had already warned investors of that exact fact. *See, e.g.*, Ex. 8 at 22 ("we incur significant expenses in developing our innovative products").

***Shift in Strategy.*** Finally, Plaintiffs offer no meaningful response to Defendants' argument that Beyond's October 14, 2022 announcement is not a corrective disclosure. *See* Opp. at 20. The Company's decision to reduce its workforce as a part of its "strategic shift" that was "intended to reduce operating expenses" and achieve "cash flow positive operations," AC ¶¶ 120–121, is a "changed economic circumstance" that securities laws do not protect against. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). Plaintiffs plead no facts to suggest that the Company's shift in strategy was related to any of the alleged challenges Beyond faced with scaling for its QSR customers. AC ¶¶ 120–121. Indeed, the Company did not mention its QSR partnerships at all in the October 14 announcement. *Id.* As before, Plaintiffs' speculation about a connection between the disclosure and a challenged statement is insufficient to establish loss causation under the PSLRA. *E.g.*, *Metzler Inv. GMBH v. Corinthian Coll.*, 540 F.3d 1049, 1064–65 (9th Cir. 2008) (court is not required to indulge unwarranted inferences).

### F.    Plaintiffs' Section 20(a) Claim Must Be Dismissed

Because Plaintiffs fail to allege a primary violation of the federal securities laws, their Section 20(a) claim—which Plaintiffs tacitly concede requires a predicate violation—fails too. *See* Order at 33; Mot. at 26.

## III.    CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion to Dismiss and dismiss Plaintiffs' Amended Complaint with prejudice.

20

Date: November 11, 2024

Respectfully submitted,

LATHAM & WATKINS LLP
Michele D. Johnson
Heather A. Waller
Ryan A. Walsh


By: */s/ Michele D. Johnson*
Michele D. Johnson
Attorneys for Defendants
Beyond Meat, Inc. and Ethan Walden Brown

21

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Beyond Meat, Inc. and Ethan Walden Brown, certifies that this brief contains 6,553 words, which complies with the word limit of L.R. 11-6.1.  In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

Dated: November 11, 2024            By: */s/ Michele D. Johnson*
                                          Michele D. Johnson

22