UNITED STATES DISTRICT COURT                JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025
**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                  Court Reporter:
Rita Sanchez                     Not Reported

Attorneys Present for Plaintiff:      Attorneys Present for Defendants:
None Present                   None Present

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS [60]; ENTRY OF JUDGMENT

      Before the Court is a Motion to Dismiss the First Amended Consolidated Class Action Complaint (the "Motion"), filed by Defendants Beyond Meat, Inc. ("Beyond Meat" or the "Company") and Ethan Walden Brown, on September 30, 2024. (Docket No. 60). Plaintiff Saskatchewan Healthcare Employees' Pension Plan ("Lead Plaintiff" or "Plaintiff") filed an Opposition on October 24, 2024. (Docket No. 62). Defendants filed a Reply on November 11, 2024. (Docket No. 64).

      On January 16, 2025, Plaintiffs filed a Notice of Supplemental Authority (the "Notice") and attached as an exhibit the Ninth Circuit's recent decision in *Oklahoma Firefighters Pension & Ret. Sys. v. Snap Inc.*, No. 23-3932, 2024 WL 5182634 (9th Cir. Dec. 20, 2024). (Docket No. 70). Defendants filed a response to the Notice on January 22, 2025. (Docket No. 71). The Court read and considered the parties arguments and the relevant authority. However, this Court ultimately did not rely on *Snap* when determining the merits of the Motion because, as discussed below, the Court did not reach the issue of scienter.

      The Court has read and considered the Motion and held a hearing on **November 25**, **2024**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

The Motion is **GRANTED** *without leave to amend* and the action is **DISMISSED.** Plaintiffs fail to sufficiently allege a material misrepresentation or omission. Having previously been given the opportunity to amend, any further amendment would be futile.

**I.     BACKGROUND**

The Court previously summarized the allegations in its Order Granting Defendants' Motion to Dismiss the Consolidated Class Action Complaint (the "Prior Order"). (Docket No. 56). The Court incorporates by reference the Background section of the Prior Order as if fully set forth herein and limits its recitation of the allegations to those necessary for context.

On October 9, 2023, Lead Plaintiff filed a Consolidated Complaint. (Docket No. 34). The prior complaint challenged thirty-seven statements and brought claims against three Beyond Meat executives. (*See generally id.*). On August 9, 2024, the Court dismissed Plaintiffs' claims. (*See generally* Prior Order).

Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC") narrowed their claims to fourteen challenged statements made over a twenty-month class period, and states claims only against Beyond Meat and Ethan Walden Brown. (*See* generally FAC (Docket No. 57)). The action is now brought on behalf of all purchasers of Beyond Meat's securities between February 25, 2021, and October 13, 2022 (the "Class Period"). (*Id.* at ¶ 2).

Plaintiffs allege that Defendants' public statements concerning Beyond Meat's investments misleadingly reassured investors that the investments were reducing production costs and improving manufacturing. (*Id.* ¶¶ 66, 69–70). The truth, however, was that undisclosed production inefficiencies were adversely impacting new product sales and margins. (*See, e.g., id.* ¶¶ 27–30, 37–39).

Based on the above allegations, Plaintiffs assert two claims for relief for violations of: (1) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5; and (2) Section 20(a) of the Exchange Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

Plaintiffs challenge the following emphasized statements:

### A. <u>Challenged Statements Regarding Beyond Meat's Scaling and Production Efforts</u>

#### 1. February 25, 2021 - 4Q 2020 Earnings Press Release

*Statement 1.* During the conference call, Brown told investors that the McDonald's and Yum! Brands agreements "***are prime examples of what we've been scaling and preparing for.***" (FAC ¶ 64).

*Statement 2.* "When an analyst asked if Brown could provide "some visibility into the near term a little bit," Brown assured investors about the large investments Beyond Meat was making to support its strategic partners, stating: ***[W]e're not doing those in a hope and a prayer.*** We're doing this as we put together some of the most powerful partnerships in the world, whether it's a Pepsi deal we announced, whether it's Yum!, whether it's McDonald's." (*Id.* ¶ 65).

*Statement 3.* Later in the call, Brown discussed the Company's strategy for reducing costs to produce Beyond Meat's new products and confirmed that by acquiring the Pennsylvania manufacturing plant "we're going to bring a lot of cost out of our production model. ***And you're starting to see us do that, whether it's in the facility we just purchased in Pennsylvania,*** where we're putting in an integrated process so we can go end-to-end there." (*Id.* ¶ 66).

#### 2. May 6, 2021 - Q1 2021 Earnings Conference Call

*Statement 4.* During the call, Brown detailed the Company's specific ongoing investment spending to support Beyond Meat's strategic QSR customers, stating: "Specific investments and activities include: the establishment of more localized production within close proximity of our highest priority markets; more integrated end-to-end production processes across a greater proportion of our manufacturing network; scale-driven efficiencies in procurement and fixed cost absorption; ***. . . continued***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

---

*improvements in throughput across our manufacturing network; [and] certain product and process innovations and reformulations . . .*" (*Id.* ¶ 69).

    **Statement 5.** Brown also told investors that scaling production for its foodservice customers was critical to the Company's cost management efforts and that Defendants were "*continuing to optimize commercial production at the Pennsylvania plant we acquired last year in support of strategic QSR customers.*" (*Id.* ¶ 70).

    **Statement 6.** On the call, Brown also confirmed that "in early March, we . . . closed $1 billion convertible senior notes offering," which "raised $1.04 billion in net proceeds for Beyond Meat." When asked by an analyst what Beyond Meat would be doing with the $1.1 billion capital raise, Brown told investors that the "relationships . . . with McDonald's and with Yum! Brands" were "the reason we had a large part for gaining the capital." Brown stated: "*So what this does is it gives us the opportunity to continue to move at a pace that matches the opportunity*. And so if you look at the relationships we just signed with McDonald's and with Yum! Brands, if you look at a lot of the names that we've been active with even before COVID and particularly before COVID in the QSR space, none of those have gone away as relationships. And so I wanted to be in a position where I had the personnel, the facilities and the research and development to be the best partner they can possibly have, even as we continue to grow in our retail space. So that was the reason we had a large part for gaining the capital.*"* (*Id.* ¶ 71).

### 3. August 5, 2021 - Q2 2021 Earnings Conference Call

    **Statement 7.** On the call, analysts raised concerns about the discrepancy between Beyond Meat's purported increase in manufacturing capacity but lack of sales growth. Brown eased investors' fears by stating that the Company had a plan in place to increase sales growth, stating: "So I think it is a combination of these efficiencies we're going to be driving through increased throughput and all the other cost-down programs that we're pursuing. . . . And then what I just said about the U.S. retail to be layered on top of that in terms of different form factors. *And so you see a steady improvement in the COGS structure as we implement this cost-down program on our existing product lines*, the ability to offer those to consumers at a lower price, and then

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025
**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

---

you layer on the strategic launches with our partners and then the new innovation coming across those 3 platforms, and that's how you bridge that." (*Id.* ¶ 74).

    **Statement 8.** The November 10, 2021 press release quoted Brown as stating that regarding "scaling products and infrastructure for our strategic quick serve restaurant partners, bringing new product to retail markets, [] investing in innovation, commercialization, and production capabilities here in the U.S., EU, and China, ***we believe we are steadily executing against our vision of being tomorrow's global protein company***." (*Id.* ¶ 82).

    Statement 8 is one of the two new statements added to the FAC.

### 4. November 10, 2021 - 3Q 2021 Earnings Conference Call

    **Statement 9.** During the conference call, Brown also told investors that "Pizza Hut launched a limited rollout of our latest product innovation Beyond Pepperoni at roughly 70 locations across 5 U.S. markets" and that "***we overcame numerous technical challenges*** to ensure that Beyond Pepperoni is nearly indistinguishable from Pizza Hut's iconic original pepperoni." (*Id.* ¶ 84).

    **Statement 10.** Brown also assured investors that Beyond Meat's investments for its large foodservice customers "***[were] not founded on hopeful thinking, but rather are the result of planning against key partnerships, market development initiatives and other opportunities***." (*Id.* ¶ 86).

### 5. November 17, 2021 - Bloomberg Article

    **Statement 11.** A Beyond Meat spokesperson was quoted in the *Bloomberg* article, stating, "[w]e elected not to use an additional co-packer who had availability because they did not meet our high safety standards for production. . . . ***This is not a question of internal problems with formulations or resulting production problems; rather, it is about ensuring we only deliver the best product expected by our customers.***' (*Id.* ¶ 95).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)     **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

### 6. February 24, 2022 - Q4 2021 Earnings Conference Call

*Statement 12.* On the conference call Brown assured investors that the high product costs for Beyond Meat's new products were temporary in nature and that Defendants "***do not expect these higher costs to persist indefinitely***." (*Id.* ¶ 110).

Statement 12 is the second new statement added to the FAC.

**B.** **Challenged Statements Regarding QSR Partnerships**

### 1. February 24, 2022 - Q4 2021 Earnings Conference Call

*Statement 13.* During the question-and-answer portion of the conference call, Brown answered an analyst's question regarding KFC and McDonald's and "whether these items are going to be on the permanent menu," stating: "***we are obviously working toward more permanent menu placement with all of our QSR partners***." (*Id.* ¶ 112).

*Statement 14.* Later in the call, Brown answered a question about advancing strategic partner trials to actual launches stating: "[I]f you look at our track record, ***we've done well with continuing to maintain the relationships with our QSRs, continue to go from test to trials and then from trials to LTOs and then from there to full launches***. And so – but there's nothing in particular we can do other than just perform well in each stage." (*Id.* ¶ 113).

**II.** **REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

Along with their Motion, Defendants filed a Request for Judicial Notice and Consideration of Documents Incorporated by Reference ("RJN") on September 30, 2024. (Docket No. 61). Plaintiffs do not oppose Defendants' RJN, so long as the documents are used for the limited purpose specified in Defendants' RJN. (Opposition at 11 fn. 3). On November 12, 2024, Defendants filed a Notice of Errata as to Exhibit 8 because a single page was inadvertently omitted. (Docket No 65.). The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)          **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

Court thus considers the correct version of Exhibit 8 (Docket No. 65-1) in the below analysis.

In the RJN, Defendants ask that the Court consider documents attached as Exhibits one through eleven to the Declaration of Heather Waller (Docket No. 60-4). (RJN at 2). The documents fall into the following two categories: (1) transcript of earning calls and a press release referenced in the FAC (Exs. 1–5, 11); and (2) SEC filings (Exs. 6–10). (RJN at 3–4).

Defendants request that the Court consider Exhibits One through Five under the incorporation by reference doctrine, and request that the Court take judicial notice of Exhibits one through eleven under the Federal Rule of Evidence 201. (RJN at 3–4).

Under Rule 12(d) of the Federal Rules of Civil Procedure, if the Court considers matters outside the pleadings in ruling on a motion to dismiss that motion must be converted into one for summary judgment. Fed. R. Civ. P. 12(d). As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). An exception to this general rule exists for (1) materials that are attached to or necessarily relied upon in the complaint, and (2) matters of public record. *Id.* at 688-89; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in assessing securities fraud claims, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

The Court determines that Exhibits One through Five are incorporated by reference. The Court also takes judicial notice of the remaining documents for the limited purpose that Defendants specify in their RJN because they are of matters of public record and are not subject to reasonable dispute.

Accordingly, the RJN is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

## III. **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)           **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

     Allegations of fraud must also meet a higher pleading standard.  *See* Fed. R. Civ. P. 9(b) (requiring the pleading party to "state with particularity the circumstances constituting fraud or mistake").  It is well-established that "[a]t the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b–5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act []."  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).  "Thus, a plaintiff must plead falsity with particularity:  a plaintiff must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'"  *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1164 (9th Cir. 2009) (quoting 15 U.S.C. § 78u–4(b)(1)).  The PSLRA further requires plaintiffs to plead scienter with particularity:  "a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).

## IV.   <u>DISCUSSION</u>

###     A.   <u>Section 10(b) and Rule 10b-5 (Claim 1)</u>

     To plead a claim under Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78a et seq., and its corresponding SEC regulation, Rule 10b-5, Plaintiffs "must allege, (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citation and internal quotation marks omitted).

     Defendants argue that Plaintiffs' Section 10(b) and Rule 10b-5 claim fails for three reasons: (1) Plaintiffs fail to plead an actionable misrepresentation or omission; (2) Plaintiffs fail to adequately plead scienter; and (3) Plaintiffs fail to plead loss causation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)          **Date:** February 26, 2025

Title: Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

### 1. Material Misrepresentation or Omission: Falsity

"[T]o properly allege falsity, a securities fraud complaint must . . . specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *In re Rigel Pharms., Inc. Secs. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)) (internal quotation marks omitted). This requirement "prevents a plaintiff from skirting dismissal by filing a complaint with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (emphasis in original). "In the Ninth Circuit, plaintiffs may establish falsity in three ways: 'if (1) the statement is not actually believed, (2) there is no reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending seriously to undermine the statement's accuracy.'" *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1175 (N.D. Cal. 2021) (quoting *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017)).

### a. Challenged Statements Regarding Beyond Meat's Scaling and Production Efforts

Plaintiffs challenge twelve statements discussing Beyond Meat's scaling and production efforts. (*See* FAC ¶¶ 64–111). Plaintiffs argue that the statements misleadingly portrayed Beyond Meat's ability to handle large-scale partnerships and concealed that the new products were far less profitable than Beyond Meat's core products, due to widespread scaling and manufacturing problems. (Opposition at 12). As such, Plaintiffs argue that, in statements one through twelve, Brown "publicly touted investments in infrastructure, overcoming technical challenges, [] optimizing production processes," and "cost reductions and improvements in production efficiency." (*Id.* at 11–12). These statements, however, were allegedly misleading because, by the beginning of the Class Period, Brown knew Beyond Meat could not cost-efficiently produce or formulate new products at scale to meet the demands of its QSR and foodservice partnerships. (*Id.* at 13). In support of this allegation, Plaintiffs point to three published investigative articles that relied on the accounts of former

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL MINUTES—GENERAL**

**Case No.** CV 23-03602-MWF (AGRx) **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

employees and/or internal Beyond Meat sources and that allegedly confirm these claims about Beyond Meat's operational problems. (*Id.*).

Defendants argue that Plaintiffs fail to allege the statements were false or misleading because the FAC does not articulate when, how, or why Defendants' plans for scaling manufacturing and production were unachievable. (Motion at 11). Instead, Plaintiffs speculate, largely based on hindsight, that Beyond Meat never would or could achieve its desired efficiencies and cost targets simply because Beyond Meat had not met those goals at the time the challenged statements were made. (*Id.*). Defendants further argue that Plaintiffs mischaracterize statements about the Company's general production and manufacturing activities or investments that were not specific to QSRs. (*Id.*). Lastly, Plaintiffs "cherry-pick" portions of Brown's statements, while ignoring his statements warning investors about higher costs or the uncertainty and risks surrounding the Company's strategy and scaling efforts. (*Id.* at 12).

The Court concludes Plaintiffs have failed to sufficiently allege that the challenged statements were false or misleading when made and thus, rise to the level of a material misrepresentation. Plaintiffs argue that Defendants' public statements concerning Beyond Meat's investments misleadingly reassured Plaintiffs that the investments were reducing production costs and improving manufacturing, but in actuality, "undisclosed production inefficiencies were adversely impacting new product sales and margins." (Opposition at 15). But the evidence of "undisclosed production inefficiencies" cited by Plaintiffs are generalized statements about production problems and critiques of Brown's management style that are vaguely and loosely tied to the content of the challenged statements. (*See* FAC ¶¶ 25–59); *see also Loftus v. Primero Mining Corp.*, 230 F. Supp. 3d 1209, 1227 (C.D. Cal. 2017) ("[N]ewspaper articles should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability. Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.") (quotation marks and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)      **Date:** February 26, 2025

Title: Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

---

For example, Plaintiffs quote from articles detailing the experience of a handful of anonymous, former Beyond Meat employees or other insiders, who claim that Brown "discusses products with customers before scaling has been figured out," "lacks the experience to run day-to-day operations of a fast-growing public company," and "doesn't want to hear differing opinions[.]" (FAC, Ex. B (Docket No. 57-2) at 6, 8); (*see also* FAC ¶ 48). Plaintiffs also point to instances of manufacturing or scaling issues that occurred at various times throughout the expansion project. (*See e.g.,* FAC ¶¶ 37–39).

Notably, the alleged challenges faced by the Company and detailed in the articles occurred at undefined periods of time during the expansion project. Based on these alleged challenges, however, Plaintiffs argue that "Defendants knew and/or recklessly disregarded" that "Beyond Meat did not have the production process in place to effectively commercialize and scale new products for its large foodservice customers." (FAC ¶ 67(a)). Accordingly, Browns' statements, for example, that the large partnerships "***are prime examples of what we've been scaling and preparing for***" or that Defendants were "***continuing to optimize commercial production . . . in support of strategic QSR customers***" were misleading when made. (*Id.* ¶¶ 67(a), 67(b)).

But Plaintiffs have failed to adequately explain how the challenged statements "affirmatively create[d] an impression" that Beyond Meat's state of operations "differ[ed] in a material way from the one that actually exist[ed]" at the time the statements were made. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *see also In re Talis Biomedical Corp. Sec. Litig.*, No. 22-CV-00105-SI, 2022 WL 17551984, at *15 (N.D. Cal. Dec. 9, 2022) (noting the complaint "does not say what timeframe [the former employee] was referring to, nor does [the former employee] provide a basis for this opinion other than to mention a lack of describing planning' and 'scheduling buffer.'"); *In re Cloudera, Inc.*, 121 F.4th 1180, 1189 (9th Cir. 2024) ("But as we have observed, later, sobering revelations do not by themselves make the earlier, cheerier statement a falsehood.") (internal quotation marks and citation omitted). At best, the factual allegations detailed in the FAC support and reflect Plaintiffs "[d]issatisfaction with a company's strategy [or] management," which

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

---

may "make for interesting reading but [is] not an actionable securities fraud claim." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024).

Accordingly, Plaintiffs fail to state with particularity, under Rule 9(b), facts "giving rise to a reasonable inference that the challenged statements were false or misleading *when made*." *Pirani v. Netflix, Inc.*, No. 22-CV-02672-JST, 2024 WL 69069, at *9 (N.D. Cal. Jan. 5, 2024) (emphasis in original); *see also In re Cloudera, Inc.*, 121 F.4th at 1188 (distinguishing between allegations that "might be enough to survive dismal" under normal pleading standards and those sufficient to survive the heightened pleading standard of cases "subject to Rule 9(b) or the PSLRA").

### b. Challenged Statements Regarding QSR Partnerships

Plaintiffs challenge two statements regarding Beyond Meat's relationships with QSRs that are allegedly misleading. (*See* FAC ¶¶ 112–14). Specifically, on the February 2022 earnings conference call, Brown stated "***we are obviously working toward more permanent menu placement with all of our QSR partners***", and "***we've done well with continuing to maintain the relationships with our QSRs, continue to go from test to trials and then from trials to LTOs and then from there to full launches***." (*Id.*). Plaintiffs argue these statements were misleading when made because Defendants knew or recklessly disregarded the fact that the Company's efforts "were already doomed." (*Id.* at ¶ 114). However, for similar reasons as those discussed above, Plaintiffs have failed to provide contemporaneous factual allegations that demonstrate that the efforts were "already doomed." (*Id.*). In fact, Defendants provide evidence that the Company saw success with some of its major partners, including McDonald's and KFC, in 2022. (*See* Motion at 14 (citing Ex. 5 (Docket No. 60-9) at 8)). Accordingly, Plaintiffs have failed to demonstrate how facts about general inefficiencies or production problems rendered Defendants' statements misleading when made.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)      **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

### 2. Material Misrepresentation or Omission: Puffery, Non-Actionable Opinion, and the PSLRA Safe Harbor

Defendants contend that the new statements challenged by the FAC—Statements 8 and 12— are not actionable. (Motion at 16–18).

#### a. Standards

##### i. *Puffery*

"Statements of mere corporate puffery, vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable" under the PSLRA "because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (internal quotation marks omitted). A statement is considered "corporate puffery" when it "is so exaggerated or vague that no reasonable investor would rely upon it when considering the total mix of information available." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d at 834 (internal quotation marks omitted).

##### ii. *Opinion*

Likewise, opinions can be non-actionable statements. "An opinion is a belief, a view, or a sentiment which the mind forms of persons or things." *In re QuantumScape*, 580 F. Supp. 3d 714, 738 (N.D. Cal. 2022) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015)). Because a PSLRA violation "require[s] falsity with respect to a material fact, there are substantial limits in applying" PSLRA liability "to a pure statement of honest opinion." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188–89 (9th Cir. 2021) (cleaned up).

##### iii. *PSLRA Safe Harbor*

Lastly, the PSLRA protects certain "forward-looking" statements from liability. *See* 15 U.S.C. § 78u-5(c). The safe-harbor provision is "designed to protect companies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 23-03602-MWF (AGRx) | **Date:** February 26, 2025 |
| **Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al. | |

and their officials when they merely fall short of their optimistic projections." *Id.* at 1189 (citation and quotations omitted).

>A forward-looking statement is statutorily defined as:
>
>(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
>
>(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
>
>(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
>
>(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);
>
>(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or
>
>(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. § 78u-5(i)(1).

### b. Statements 8 and 12

The Court agrees that both statements are a not actionable. First, Statement 8 reads: "***we believe we are steadily executing against our vision of being tomorrow's global protein company.***" The Court determines the statement to be corporate puffery. Moreover, it simply expresses an opinion held by Brown about a forward-looking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No. CV 23-03602-MWF (AGRx)            Date: February 26, 2025
Title: Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

vision or goal of the Company. Accordingly, Statement 8 is a non-actionable opinion, is considered corporate puffery, and is protected by the PSLRA safe harbor.

Second, Statement 12 reads: "we ***do not expect these higher costs to persist indefinitely***." Statement 12 also expresses a forward-looking statement about the Company's performance, and the Court previously dismissed a similar statement. *See* Prior Order at 26 (dismissing under the PSLRA safe harbor a statement reading, "we're going to bring a lot of cost out of our production model."); *see also Kong v. Fluidigm Corp.*, No. 22-15396, 2023 WL 2134394, at *1 (9th Cir. Feb. 21, 2023) ("These statements assess 'how various future events will play out'—they do not describe 'specific, concrete circumstances that have already occurred.'") (citation omitted).

### 3. Scienter

In order to survive a motion to dismiss, the Complaint must create a strong inference of scienter. *See* 15 U.S.C. § 78u–4(b)(2) (The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). "To [create] a 'strong inference' of scienter under the PSLRA, a complaint must allege that the defendant made false or misleading statements with an intent to deceive, manipulate, or defraud, or with deliberate recklessness." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1106 (9th Cir. 2021) (citation and internal quotation marks omitted). Deliberate recklessness is not "*mere* recklessness." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (citation omitted) (emphasis in original). Instead, it is "an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (citation omitted) (emphasis in original).

The "strong inference" standard "present[s] no small hurdle for [a] securities fraud plaintiff." *Id.* (citation omitted). A reviewing court must "engage in a comparative evaluation [and] . . . consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. A complaint will survive a motion to dismiss "only if a reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

**Case No.** CV 23-03602-MWF (AGRx)          **Date:** February 26, 2025

**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Because Plaintiffs have not alleged a material misrepresentation or omission, they are not able to allege that Beyond Meat or Brown had knowledge of falsity or acted with deliberate recklessness as to any of the challenged statements. *See Hershewe v. Joyy, Inc.*, No. 22-55377, 2023 WL 3316328, at *2 (9th Cir. May 9, 2023).

### 4. Loss Causation

"The Court need only address loss causation if a plaintiff has otherwise pleaded actionable misstatements or omissions." *In re Intel Corp. Sec. Litig.*, No. 5:20-CV-05194-EJD, 2023 WL 2767779, at *26 (N.D. Cal. Mar. 31, 2023), *aff'd*, No. 23-15695, 2024 WL 1693340 (9th Cir. Apr. 19, 2024) (internal citation omitted).

Plaintiffs fail to sufficiently plead the material misrepresentation element. Accordingly, the Motion is **GRANTED** as to Plaintiffs' 10(b) claim.

### B. Section 20(a) Claim (Claim 2)

The parties agree that Plaintiffs' § 20(a) claim is derivative of its §10(b) claim. (Motion at 26; Opposition at 29); *see also Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily, . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)."). Because Plaintiffs failed stated a § 10(b) or Rule 10b-5 violation, there is no alleged primary violation that could support a § 20(a) claim.

Accordingly, the Motion is **GRANTED** as to Plaintiffs' Section 20(a) and 20A claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
<u>CIVIL MINUTES—GENERAL</u>

**Case No.** CV 23-03602-MWF (AGRx)        **Date:** February 26, 2025
**Title:** Saskatchewan Healthcare Employees' Pension Plan v. Beyond Meat, Inc. et al.

### V. <u>LEAVE TO AMEND</u>

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended its complaint. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

The Court concludes that leave to amend should not be granted. Even in the absence of bad faith and undue delay, the remaining factors weigh against further amendment. Repeated amendments, of course, prejudice Defendants by requiring a written response. More importantly, granting leave to amend would be futile. Plaintiffs already amended their compliant once, in response to the Court's Prior Order. Plaintiffs' FAC did not cure the deficiencies; Plaintiffs did not offer any amendments; and this Court does not perceive what amendments would be possible.

### VI. <u>CONCLUSION</u>

Accordingly, the Motion is **GRANTED** *without leave to amend* and the action is **DISMISSED**.

IT IS SO ORDERED.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. Pursuant to Local Rule 58-6, the Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment.